151 F.3d 1139
 98 Cal. Daily Op. Serv. 4710, 98 Daily Journal
D.A.R. 6688
UNITED STATES of America, Ex Rel., SEQUOIA ORANGE COMPANY;
Lisle Babcock, Plaintiffs-Appellants,
v.
BAIRD-NEECE PACKING CORPORATION; Sunkist Growers Inc.;
Sunland Packing House Company; San Joaquin Citrus; Baker
Brothers Sunkist Packing House; Dept. of Agriculture,
Clayton Yeutter, Secretary of Agriculture; Jack Parnell,
Deputy Secretary of Agriculture; Joann Smith, Assistant
Secretary of Agriculture; Dan Haley, Administrator,
Agricultural Marketing Service; Kaweah Citrus Association;
Oxnard Lemon Company; Edward Madigan, Secretary of
Agriculture; Mission Citrus Company; Ventura Pacific
Company; Saticoy Lemon Association; Dole Citrus, a
California corporation aka Blue Goose Growers, Inc., dba
Central Valley Citrus; Strathmore Packing House Company;
Millwood Packing Inc.; Blue Banner Company Inc.; Ventura
County Fruit Growers, Inc.; Limonera Company, Defendants-Appellees.
Kendall L. Nanock, Fresno, California, for Grand View
defendants-appellees.
 No. 96-15024.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1997.
Decided June 19, 1998.
 
 James Moody, Washington, DC, for plaintiffs-appellants.
 Brian C. Leighton, Clovis, California, for plaintiffs-appellants.
 Douglas Letter, United States Department of Justice, Washington, DC, for defendants-appellees.
 Michael H. Bierman, Tuttle & Taylor, Los Angeles, California, for defendant-appellee Sunkist Growers.
 Robert L. Compton, Laura K. McAvoy, Susan M. Seemiller, Nordman, Cormany, Hair & Compton, Oxnard, California, for defendants-appellees Ventura Pacific Co. & Saticoy Lemon Assn.
 Gerald D. Vinnard, Thomas, Snell, Jamison, Russell and Asperger for defendant-appellee Stark Packing Corp.
 Kendall L. Manock, Fresno, California, Robert D. Wilkinson, Douglas M. Larsen, Baker, Manock & Jensen, for defendants-appellees Baird-Neece Packing Corp., Sunland Packing House Co., San Joaquin Citrus Assn., and Dole Citrus.
 Appeal from the United States District Court for the Eastern District of California; Oliver W. Wanger, District Judge, Presiding. D.C. Nos. CV-88-00566-OWW, 89-00002-OWW, 89-00050-OWW, 91-00194-OWW, 91-00195-OWW, 91-00196-OWW, 91-00197-OWW, 93-05016-OWW, 94-05287-OWW, 94-05288-OWW, 94-05289-OWW, 94-05290-OWW, 94-05291-OWW.
 Before: SNEED, SCHROEDER and BRUNETTI, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is a qui tam case under the False Claims Act (FCA). One citrus company seeks damages from other citrus companies, claiming that they made false statements to the government in connection with a citrus marketing program. The government intervened several years after the litigation began and sought dismissal under 31 U.S.C. § 3730(c)(2)(A) because it had decided to abandon the entire marketing program. The case must be seen against the background of a war in the citrus industry related to the administration of that program. The district court granted the government's motion to dismiss, finding that the government's decision to end that war on all fronts, including dismissal of the qui tam claims, was rationally related to a legitimate governmental purpose. See United States ex rel. Sequoia Orange Co. v. Sunland Packing House Co., 912 F.Supp. 1325 (E.D.Cal.1995).
 
 
 2
 The qui tam relators appeal contending that because the false claims actions had some merit, the government cannot seek dismissal. The appeal thus requires us to consider what standard a court should apply when considering the government's motion to dismiss a qui tam action that otherwise would not be dismissed before the litigation was fully resolved. We affirm.
 
 BACKGROUND
 
 3
 Sequoia Orange Company (an orange processor) and Lisle Babcock (an orange grower) filed 34 qui tam actions against a number of citrus industry growers and packinghouses alleging violations of the orange and lemon marketing orders promulgated by the Secretary of Agriculture pursuant to the Agricultural Marketing Agreement Act of 1937 (AMAA), 7 U.S.C. §§ 601-626. The relators began filing the actions in 1988.
 
 
 4
 The AMAA "authorizes the Secretary of Agriculture to issue marketing orders limiting the quantity of commodities shipped into markets identified by the Secretary, thus protecting prices for producers and maintaining orderly marketing conditions." Cecelia Packing Corp. v. USDA, 10 F.3d 616, 618 (9th Cir.1993). The Secretary in 1984 had issued orange and lemon marketing orders that regulated the quantity of oranges and lemons shipped to market by citrus handlers in Arizona and California. See 7 U.S.C. § 608c; 7 C.F.R. §§ 907.1, 908.1, 910.1 (1994). Citrus handlers who ship oranges and lemons in excess of their allotment ("prorate") are subject to criminal fines and civil penalties. See 7 U.S.C. §§ 608a(5), 608c(14).
 
 
 5
 The qui tam relators alleged that the defendants had, over the course of approximately ten years, violated the prorate provisions of the orange and lemon marketing orders by over-shipping citrus and failing accurately to report, account and pay assessments for those overshipments. Prior to the expiration of the 60-day seal period, see 31 U.S.C. § 3730(b)(2), the government elected to intervene in 10 of the qui tam cases.
 
 
 6
 As the relators were filing their qui tam complaints, the government was also filing prorate violation claims under the AMAA against citrus industry growers and packinghouses, including Sequoia Orange Company. After discovering growing evidence of widespread prorate violations in the industry, the Secretary concluded that the prorate cheating reflected dissatisfaction with the citrus marketing orders, and that the orders had become divisive. In June 1993 the Secretary formally suspended orange and lemon prorate regulation and invited the citrus industry to propose amendments to the marketing orders.
 
 
 7
 Simultaneously, the government proposed a settlement of all AMAA and FCA cases alleging prorate violations in order to end industry turmoil. To facilitate the settlement, the government moved to intervene in the remaining 24 qui tam cases pursuant to 31 U.S.C. § 3730(c)(3), which permits the government to intervene in a qui tam action at any time "upon a showing of good cause." The district court granted the motion, over the relators' objections, on the basis of the government's representations that it would litigate the qui tam actions, in conjunction with the AMAA cases, if a settlement could not be reached.
 
 
 8
 While the settlement negotiations were proceeding, the district court ruled in April 1994 that the 1984 orange marketing orders were unlawfully promulgated and that the prorate provisions of the orange marketing orders were therefore invalid. See United States v. Sunny Cove Citrus Ass'n, 854 F.Supp. 669, 697 (E.D.Cal.1994). The Sunny Cove case involved the government prosecution of another citrus handler, Sunny Cove, for violations of orange prorate regulations. Sunny Cove successfully defended the prosecution on the ground that the Secretary's reinstatement of prior marketing orders was invalid. That decision made settlement less likely in these qui tam cases because the overwhelming majority of qui tam and AMAA actions were based on the invalidated prorate regulations.
 
 
 9
 In May 1994, the Secretary announced his decision to terminate the citrus marketing orders, dismiss all pending AMAA actions, and withdraw from the FCA cases. The Secretary justified this decision on the failure of the settlement negotiations, the prospect of more litigation after the Sunny Cove decision, and the desire to end the divisiveness in the citrus industry caused by over ten years of litigation. The Secretary concluded that the best way to advance the interests of the industry was to "clean the slate."
 
 
 10
 At the time of the Secretary's announcement, the government apparently did not believe it had the authority to dismiss the qui tam actions over the relators' objections. After soliciting advice from all parties on the government's authority to dismiss under 31 U.S.C. § 3730(c)(2)(A), the government moved for dismissal in August, 1994, citing six reasons: (1) to end the divisiveness in the citrus industry; (2) to facilitate a new marketing order; (3) to terminate protracted and burdensome litigation; (4) to protect the United States' taxpayers from continuing and escalating litigation expenses; (5) to curtail the drain on private resources resulting from the litigation; and (6) to allow the growers, agricultural cooperatives, handlers and others to work together in shaping new marketing tools.
 
 
 11
 After a four-day evidentiary hearing, the district court granted the government's motion to dismiss the qui tam actions, ruling that the government sought dismissal for legitimate government purposes; that the reasons offered by the government were rationally related to these legitimate government purposes; and that the dismissal was not arbitrary or capricious. See 912 F.Supp. at 1353. The relators appeal, contending that the district court could not dismiss on the government's motion unless the court found the cases lacked merit.
 
 DISCUSSION
 
 12
 The legal issues turn on the provisions of the False Claims Act as it was amended in 1986. Under the qui tam provisions of the FCA, a private individual, referred to as a relator, may file an action on behalf of the federal government against any individual or company who has knowingly presented a false claim to the government for payment. See 31 U.S.C. §§ 3729(a), 3730(b). A successful relator will generally receive a share of the civil fines imposed and be eligible for attorneys' fees and costs. See 31 U.S.C. § 3730(d); United States ex rel. Hall v. Teledyne Wah Chang Albany, 104 F.3d 230, 233 (9th Cir.1997).
 
 
 13
 To proceed with a qui tam action, the relator must serve a copy of the complaint on the government 60 days before it is served on the defendant. See 31 U.S.C. § 3730(b)(2). During the 60-day period, the government can investigate the complaint's allegations and elect to intervene in the action, in which case the action is conducted by the government. 31 U.S.C. § 3730(b)(4)(A).
 
 
 14
 When the government chooses not to take over a qui tam action, the relator has the right to conduct the action. 31 U.S.C. § 3730(c)(3). However, even in cases where the government initially elects not to take over the action, the court "may nevertheless permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3); United States ex rel. Kelly v. Boeing Co., 9 F.3d 743, 746 (9th Cir.1993). The government may dismiss the action "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A); Kelly, 9 F.3d at 746.
 
 I.
 Dismissal of a Qui Tam Action
 
 15
 The relators' primary contention is that the district court erred by interpreting 31 U.S.C. § 3730(c)(2)(A) to allow the government to dismiss a meritorious qui tam action. The government conceded, for purposes of its motion to dismiss, that the FCA claims against the defendants were meritorious. The issue is one of statutory interpretation which we review de novo. See United States ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242, 245 (9th Cir.1995).
 
 
 16
 Although the statute is silent regarding the circumstances under which the government may dismiss a qui tam action, the decision to dismiss has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws. See Kelly, 9 F.3d at 756 (rejecting qui tam defendant's contention that 31 U.S.C. § 3730(c)(2)(A) impermissibly grants the judiciary approval authority over government decisions to dismiss qui tam suits in the exercise of its prosecutorial authority); see also United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715, 724 (9th Cir.1994) ("The Court will not assume that the qui tam provisions of the False Claims Act were intended to curtail the prosecutorial discretion of the Attorney General.") (quoting Juliano v. Federal Asset Disposition Ass'n, 736 F.Supp. 348, 351 (D.D.C.1990), aff'd, 959 F.2d 1101 (D.C.Cir.1992)).
 
 
 17
 The relators argue that interpreting 31 U.S.C. § 3730(c)(2)(A) to give the government authority to dismiss a meritorious qui tam action is inconsistent with the general framework of the False Claims Amendments Act of 1986, Pub.L. No. 99-562, 100 Stat. 3154, which was intended to provide relators with "increased involvement in suits brought by the relator but litigated by the Government." S.Rep. No. 99-345, at 13 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5278; see also Kelly, 9 F.3d at 745 ("Congress amended the FCA in 1986 to ... enlist the aid of the citizenry in combatting the rising problem of 'sophisticated and widespread fraud.' ") (citation omitted).
 
 
 18
 Before the 1986 amendments, when the government elected to intervene in a qui tam action, the suit was conducted solely by the government. The 1986 amendments allow the relator to continue as a party to the action after the government's intervention. See 31 U.S.C. § 3730(c)(1). Although the amendments increased the relator's role in such a case, the government still has "primary responsibility" for the case and now enjoys supervisory powers over the relator. Id. The government can limit the relator's participation by restricting the number of the relator's witnesses or the length of their testimony. See 31 U.S.C. § 3730(c)(2)(C). The government may also stay the relator's discovery requests if they are likely to interfere with the government's criminal or civil investigation of related matters. See 31 U.S.C. § 3730(c)(4). The amended statute allows the government to settle an action, notwithstanding the objections of the relator, as long as the court determines that the proposed settlement is fair. See 31 U.S.C. § 3730(c)(2)(B). Most relevant to the present suit, the government has the right to dismiss the action, notwithstanding the relator's objection, if the relator is afforded notice and a hearing. See 31 U.S.C. § 3730(c)(2)(A).
 
 
 19
 The 1986 amendments have also expanded the government's ability to intervene in a qui tam action. The government may move for an extension of the original 60-day period for deciding whether to intervene. See 31 U.S.C. § 3730(b)(3). Even after that period has expired, the government now has the right to track the litigation and to intervene at a later date upon a showing of good cause. See 31 U.S.C. § 3730(c)(3).
 
 
 20
 Thus, while we have observed that the False Claims Amendments Act of 1986 provided "increase[d] incentives, financial and otherwise, for private individuals to bring suits on behalf of the Government," Killingsworth, 25 F.3d at 721, the Act actually increased, rather than decreased, executive control over qui tam lawsuits. This has been accomplished by broadening the government's powers of intervention, and by giving the government the ability to supervise the relator's participation in a qui tam action when the government elects to intervene. Certain of the government's supervisory powers, such as the power to stay the relator's discovery, apply even if the government decides not to intervene. As one court has concluded, "[t]he 1986 version of the False Claims Act continues the evolution of greater executive control over qui tam lawsuits." See United States ex rel. Stillwell v. Hughes Helicopters, Inc., 714 F.Supp. 1084, 1090 (C.D.Cal.1989).
 
 
 21
 Although the amendments give the relator the right to remain a party after government intervention, the government's power to dismiss or settle an action is broad. The amended statute grants the relators an opportunity for a hearing on the motion to dismiss, but does not specify any conditions under which the relator may block the motion. This court has previously noted that "[i]t is not clear whether in practice this notice and hearing requirement has amounted to much of a hurdle for the government." Kelly, 9 F.3d at 753 n. 11.
 
 
 22
 The relators point to the statement in Kelly that 31 U.S.C. § 3730(c)(2)(A) allows the government to "move for dismissal of a case which it believes has no merit." See id. at 753. They suggest that this statement means that lack of merit is the exclusive ground upon which the government may seek dismissal. Kelly does not so hold.
 
 
 23
 The legislative history of the 1986 Amendments supports the district court's conclusion that a meritorious suit may be dismissed upon a proper showing. The Senate Report states that the False Claims Amendments Act of 1986 "provides qui tam plaintiffs with a more direct role ... in acting as a check that the Government does not neglect evidence, cause undue delay, or drop the false claims case without legitimate reason." S.Rep. No. 99-345, at 25-26 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5291. This statement reflects congressional intent that the qui tam statute create only a limited check on prosecutorial discretion to ensure suits are not dropped without legitimate governmental purpose.
 
 
 24
 The relators next contend that even if the government could have dismissed the cases had it intervened initially, it could not move for dismissal after it later intervened for good cause pursuant to 31 U.S.C. § 3730(c)(3). We rejected a similar contention in Kelly: "[W]hen the government intervenes late in the action, a fair interpretation of the statute is that the government has a similar degree of control over the litigation as if it had intervened at the start." Kelly, 9 F.3d at 752. Nothing in § 3730(c)(2)(A) purports to limit the government's dismissal authority based upon the manner of intervention. This court has noted that § 3730(c)(2)(A) may permit the government to dismiss a qui tam action without actually intervening in the case at all. See Kelly, 9 F.3d at 753 n. 10 (citing Juliano v. Federal Asset Disposition Ass'n, 736 F.Supp. 348 (D.D.C.1990), aff'd, 959 F.2d 1101 (D.C.Cir.1992)).
 
 II.
 Standard Governing a Motion to Dismiss
 Under 31 U.S.C. § 3730(c)(2)(A)
 
 25
 The relators next challenge the district court's choice of standard governing dismissal under 31 U.S.C. § 3730(c)(2)(A). The relators contend that, if the government does have the authority to dismiss a meritorious qui tam action under 31 U.S.C. § 3730(c)(2)(A), the applicable standard is Rule 41(a)(2) of the Federal Rules of Civil Procedure. That rule allows the court to grant a plaintiff's dismissal motion only with appropriate terms and conditions to protect the defendant from prejudice. In this case, because dismissal prejudiced the relators by precluding a qui tam award, the relators claim that dismissal should not have been permitted.
 
 
 26
 Rule 41 protects defendants from vexatious plaintiffs. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 397, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In this case, the plaintiffs, or relators, seek protection from the dismissal decision of the real party in interest, the government, under a specific statute establishing unique relationships among the parties. The district court correctly ruled that Rule 41 did not apply.
 
 
 27
 The qui tam statute itself does not create a particular standard for dismissal. The district court acted reasonably in adopting the following standard: "A two step analysis applies here to test the justification for dismissal: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose." 912 F.Supp. at 1341. If the government satisfies the two-step test, the burden switches to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." Id. at 1347. The same analysis is applied to determine whether executive action violates substantive due process. See e.g., Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990).
 
 
 28
 This standard also draws significant support from the Senate Report to the False Claims Amendments Act of 1986, which explained that the relators may object if the government moves to dismiss without reason. S.Rep. No. 99-345, at 26 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5291. A hearing is appropriate "if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary or improper considerations." Id.
 
 
 29
 Moreover, such a rational relation test avoids any separation of powers concerns that this court addressed in Kelly. There, we rejected a qui tam defendant's contention that 31 U.S.C. § 3730(c)(2)(A) impermissibly grants the judiciary approval authority over government decisions to dismiss qui tam suits in the exercise of its prosecutorial authority. See United States ex rel. Kelly, 9 F.3d at 756. We said:
 
 
 30
 We conclude that the judicial involvement which the FCA authorizes does not contravene the separation of powers principle. First, in the absence of any meaningful indication that [the notice and hearing] requirements pose significant barriers to the Executive Branch's exercise of its prosecutorial authority, we see no reason to construe them as such and thereby heighten constitutional concerns. See note 8. Second, as we noted earlier, ample precedent exists for judicial oversight of the government's decision to dismiss a qui tam action. See note 12.
 
 
 31
 Id.
 
 
 32
 Here, the district court has respected the Executive Branch's prosecutorial authority by requiring no greater justification of the dismissal motion than is mandated by the Constitution itself. See United States v. Redondo-Lemos, 955 F.2d 1296, 1298-99 (9th Cir.1992) (due process prohibits arbitrary or irrational prosecutorial decisions).
 
 III.
 
 33
 Application of the Rational Relation Standard
 
 
 34
 The relators contend that the district court misapplied the rational relation standard and that the reasons offered by the government for dismissal were not rationally related to a legitimate government interest. We conclude that the government met its burden.
 
 
 35
 The relators first argue that elimination of legal battles in the citrus industry is not a legitimate government interest under the AMAA. The statute directs the Secretary to oversee orderly marketing processes. See 7 U.S.C. § 602(1). Peace among competitors and regulators facilitates orderly marketing. This is especially true under a statute, which as the Supreme Court has noted, "contemplates a cooperative venture among the Secretary, handlers, and producers." Block v. Community Nutrition Inst., 467 U.S. 340, 346, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (emphasis added).
 
 
 36
 The relators next assert that the government's dismissal motion was based on improper factors, such as political pressure from the defendants and members of Congress. However, as noted by the district court, citizens are entitled to advocate the passage or enforcement of laws, see, e.g., Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 139, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) ("It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors."), and members of Congress may seek to influence agency action, see, e.g., Radio Ass'n on Defending Airwave Rights, Inc. v. United States Dep't of Transp., 47 F.3d 794, 808 (6th Cir.1995) ("Americans rightly expect their elected representatives to voice their grievances and preferences concerning the administration of our laws."). There was no evidence that the defendants engaged in bribery, fraud, or coercion, or otherwise conspired with the government to dismiss the qui tam actions for improper reasons.
 
 
 37
 Third, the relators contend that the government sought dismissal because Sequoia Orange Company itself was a prorate cheater. The record shows, however, that the government deemed further FCA litigation over prorate violations harmful to the industry as a whole. Dismissal enabled the government to treat all alleged prorate violators equally by dismissing all enforcement actions, including the Secretary's AMAA enforcement action against Sequoia.
 
 
 38
 Next, the relators contend that the government's concern with litigation costs was irrelevant in light of the fact that the FCA contemplates reliance on private financing for anti-fraud enforcement. The district court, however, properly noted that the government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs. See 912 F.Supp. at 1346.
 
 
 39
 The relators finally contend that the district court erred by granting the government's motion to dismiss the qui tam actions relating to lemon marketing because the lemon order, unlike the orange order, had not been invalidated by the Sunny Cove decision. The government presented evidence that (1) various lemon handlers were under investigation for prorate violations and (2) the lemon prorate violations were comparable to prorate cheating in the orange industry and potentially as pervasive. The dismissal of the lemon cases was therefore rationally related to the legitimate government interest in preserving the financial stability of the lemon industry.
 
 IV.
 Judicial Estoppel
 
 40
 The relators contend that the doctrine of judicial estoppel bars the government from dismissing the qui tam actions in light of the government's earlier declarations, in support of its motion to intervene in the orange qui tam actions, that it would diligently prosecute the FCA claims. The doctrine of judicial estoppel is an equitable doctrine invoked by the district court at its discretion. See Morris v. California, 966 F.2d 448, 453 (9th Cir.1992). This court reviews for an abuse of discretion. See United States v. Ruiz, 73 F.3d 949, 953 (9th Cir.1996).
 
 
 41
 Judicial estoppel bars a party from taking inconsistent positions in the same litigation. See Morris, 966 F.2d at 452. In support of its motion to intervene in the qui tam actions, the government represented to the district court that it would litigate the FCA claims if no settlement was reached. The relators contend that this representation is inconsistent with the government's later decision to dismiss. In moving to dismiss, however, the government was motivated by events that transpired after its intervention, most notably the decision in Sunny Cove, which declared the orange marketing orders invalid. There is no indication that the government acted in bad faith by representing that it would litigate the FCA claims if settlement negotiations fell through. See Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir.1997). Rather, the government changed course when it determined that settlement was no longer a reasonable possibility after Sunny Cove. This was a rational policy decision that the government was entitled to make under the qui tam provisions. Accordingly, the district court did not abuse its discretion in concluding that there was no equitable reason to apply judicial estoppel.
 
 V.
 Amendment of Qui Tam Complaints
 
 42
 This court reviews for an abuse of discretion the district court's denial of a motion for leave to amend a complaint. See United States v. County of San Diego, 53 F.3d 965, 969 n. 6 (9th Cir.1995).
 
 
 43
 After the district court granted the government's motion to dismiss the qui tam actions, the relators informally requested leave to file amended complaints alleging non-FCA claims. The court denied the relators' request on the ground that they had failed to provide reasonable notice and an opportunity for hearing on the request, in violation of Rule 15 of the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of California. Given the extremely late date at which the relators first requested leave to amend, the district court did not abuse its discretion in denying the request. See Fed.R.Civ.P. 15(a); Moore v. Kayport Package Express, 885 F.2d 531, 538 (9th Cir.1989) (court may consider delay and prejudice when ruling on motion for leave to amend).
 
 CONCLUSION
 
 44
 We conclude that 31 U.S.C. § 3730(c)(2)(A) permits the government to dismiss a meritorious qui tam action over a relator's objections. Where, as here, the government offers reasons for dismissal that are rationally related to a legitimate government interest, the qui tam action may be dismissed.
 
 
 45
 AFFIRMED.