**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2311
_____

WEIH STEVE CHANG, United States of
America and State of Delaware, Ex Rel.

v.

CHILDREN'S ADVOCACY CENTER OF DELAWARE

Weih Steve Chang,
　　　　　　　　　　Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
D.C. No. 1-15-cv-00442
District Judge: Hon. Gregory M. Sleet
_____

Argued: July 2, 2019

Before: McKEE, PORTER, and RENDELL, *Circuit Judges*.

(Filed: September 12, 2019)
_____

Michael J. Confusione　　[**Argued**]
HEGGE & CONFUSIONE, LLC
P.O. Box 366
Mullica Hill, NJ 08062-0366

*Counsel for Plaintiff-Appellant Weih Chang*

David C. Weiss
Dylan J. Steinberg     [**Argued**]
Jesse S. Wenger
UNITED STATES DEPARTMENT OF JUSTICE
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899-2046

 *Counsel for Plaintiff-Appellee*
 *United States of America*

Edward K. Black
DELAWARE DEPARTMENT OF JUSTICE
820 North French Street, 6th Floor
Wilmington, DE 19801

 *Counsel for Plaintiff-Appellee*
 *State of Delaware*

Kimberly A. Boyer-Cohen
MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
2000 Market Street
Philadelphia, PA 19103

 *Counsel for Defendant-Appellee Children's*
 *Advocacy Center of Delaware*

————————————————

OPINION OF THE COURT

————————————————

PORTER, *Circuit Judge*.

 Weih Chang appeals the District Court's orders dismissing his complaint under the False Claims Act ("FCA") and its Delaware counterpart. He argues that the District Court was obliged under those statutes to hold an in-person hearing before dismissing his claims. We disagree, so we will affirm.

I

A

The FCA prohibits the submission of false claims for payment to the United States. *See* 31 U.S.C. § 3729(a)(1); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 486 (3d Cir. 2017). To incentivize its own enforcement, the FCA allows private individuals to sue for alleged violations—called *qui tam* suits—and offers them a percentage of an eventual recovery. *See* 31 U.S.C. § 3730(d).

In a typical *qui tam* action, a private party (called a "relator") sues a defendant on behalf of the government for alleged FCA violations. The United States then has 60 days (plus any granted extensions) to review the claim and decide whether it will "elect to intervene and proceed with the action." § 3730(b)(2). If the government intervenes, the relator has the right to continue as a party, but the government assumes the "primary responsibility for prosecuting the action." § 3730(c)(1). If the government chooses not to intervene, the relator may still "conduct the action." § 3730(c)(3).

Yet even under the latter scenario, the government may still "dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." § 3730(c)(2)(A).

B

Chang filed a *qui tam* action against the Children's Advocacy Center of Delaware, asserting claims on behalf of the United States and the State of Delaware under the FCA and the Delaware False Claims Act ("DFCA").[1] In short, Chang alleged that the Center had applied for and received

---

[1] The FCA and the DFCA are materially identical for the purposes of this opinion. *Compare* 31 U.S.C. § 3730(c)(2)(A), *with* Del. Code Ann. tit. 6, § 1204(b).

funding from the state and federal governments by misrepresenting certain material information. Both governments declined to intervene as plaintiffs, so Chang filed an amended complaint and the Center answered.

Nearly three years after Chang had filed his original complaint, the United States and Delaware each moved to dismiss the case. The governments asserted that they had investigated Chang's allegations and discovered them to be "factually incorrect and legally insufficient." App. 114. Chang filed a consolidated opposition to the motions, contending that the Court should await summary judgment rather than dismiss the case, but did not request oral argument or a hearing.

The District Court granted the governments' motions without conducting an in-person hearing or issuing a supporting opinion. Chang timely appealed.

II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and 31 U.S.C. § 3732. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of the governments' motions to dismiss de novo. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2005).

III

The issue presented is whether the District Court erred by granting the governments' motions to dismiss Chang's *qui tam* action without first conducting an in-person hearing. Put another way, since Chang never requested a hearing, does the FCA guarantee an automatic in-person hearing to relators before their cases may be dismissed? Chang says that it does. We disagree.

The parties presented this appeal as an opportunity for us to take a side in a putative circuit split. On one hand, the Ninth Circuit says that courts have approval authority over the government's decision to dismiss a *qui tam* suit. *See United States ex rel. Sequoia Orange Co. v. Baird-Neece*

4

*Packing Corp.*, 151 F.3d 1139, 1145–46 (9th Cir. 1998). This test requires the government to show (1) "a valid government purpose" and (2) "a rational relation between dismissal and accomplishment of the purpose." *Id.* at 1145. If the government meets these prongs, "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.* The Tenth Circuit has also adopted this standard. *See United States ex rel. Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925, 934–35 (10th Cir. 2005).

The D.C. Circuit, by contrast, has held that the United States has "an unfettered right" to dismiss a *qui tam* case. *See Swift v. United States*, 318 F.3d 250, 252–53 (D.C. Cir. 2003); *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008). The Executive, says that court, has "absolute discretion" under the Take Care Clause of the Constitution on "whether to bring an action on behalf of the United States," and the FCA nowhere purports to take that discretion away. *Swift*, 318 F.3d at 252–53 (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

We need not take a side in this circuit split because Chang fails even the more restrictive standard.

The government has an interest in minimizing unnecessary or burdensome litigation costs. *See Sequoia*, 151 F.3d at 1146 ("[T]he government can legitimately consider the burden imposed on the taxpayers by its litigation[;] … even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs."); *Swift*, 318 F.3d at 254 ("[T]he government's goal of minimizing its expenses is … a legitimate objective, and dismissal of the suit furthered that objective."). The United States and Delaware both cited this goal in their motions to dismiss. And dismissing a case is, of course, the easiest way to achieve that objective.

Once the governments moved to dismiss, the burden then shifted to Chang "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia*, 151 F.3d at 1145. He failed to do so, but says that this is beside the point because the FCA guarantees him an automatic in-

5

person hearing at which he should have been allowed to introduce evidence to satisfy his burden.

The plain language of both the FCA and the DFCA provides relators an "opportunity for a hearing" when the government moves to dismiss. 31 U.S.C. § 3730(c)(2)(A); Del. Code tit. 6, § 1204. Chang would have us hold that the District Court erred by not sua sponte scheduling and conducting an in-person hearing, even though Chang never requested one. An "opportunity for a hearing," however, requires that relators avail themselves of the "opportunity." Indeed, most courts that have considered this language have held that an in-person hearing is unnecessary unless the relator expressly requests a hearing or makes a colorable threshold showing of arbitrary government action. *See, e.g.*, *Sequoia Orange*, 151 F.3d at 1145 ("A hearing is appropriate 'if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary or improper considerations.'" (quoting S. Judiciary Comm., False Claims Amendments Act of 1986, S. Rep. No. 99-345, at 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291)); *cf. Swift*, 318 F.3d at 251 (noting that the district court held a hearing when the relator "opposed dismissal and requested a hearing").[2] We find these decisions persuasive.[3] We thus hold

---

[2] *See also, e.g.*, *United States ex rel. Mateski v. Mateski*, 634 F. App'x 192, 194 (9th Cir. 2015) ("The district court did not err in denying Mateski a hearing in this case because Mateski is only entitled to a hearing if he presents a colorable claim[.]"); *Martin v. United States Dep't of Agric.*, No. CV 118-009, 2019 WL 166554, at *3 (S.D. Ga. Jan. 10, 2019) ("[T]he Court finds that it is unnecessary to hold a hearing in this case before granting the Government's motion to dismiss."); *United States v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2018 WL 1947760, at *2 (N.D. Cal. Apr. 25, 2018) ("The relator is not entitled to an evidentiary hearing as a matter of right.").

6

³ We note that some courts hold that a "hearing" in this context includes written submissions. *See, e.g.*, *United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 417CV000053GHDRP, 2019 WL 1305069, at \*10 (N.D. Miss. Mar. 21, 2019) ("Sibley also contends that she is entitled to an evidentiary hearing as a matter of right. Not so. Again, Sibley cites no statutory basis for that request. As numerous courts have held, the hearing requirement is satisfied by allowing the relator an opportunity to submit a response to the motion." (internal quotation marks and citations omitted)); *United States ex rel. May v. City of Dallas*, No. 3:13-CV-4194-N-BN, 2014 WL 5454819, at \*4 (N.D. Tex. Oct. 27, 2014) ("Under 31 U.S.C. § 3730(c)(2)(A), a relator is entitled to 'an opportunity for a hearing on the motion [to dismiss].' As the undersigned noted in affording Relator an opportunity to respond to the motion to dismiss, the hearing requirement is satisfied by allowing the relator an opportunity to submit a response to the motion[.]" (citations omitted)). This approach is analogous to our decision that the phrase "civil, criminal, or administrative hearing" in a similar FCA provision encompasses any "allegations and information disclosed in connection with civil, criminal, or administrative litigation." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1156 (3d Cir. 1991). We take no position on whether this is the correct interpretation of "hearing" in this context.

that the dismissal provisions in the FCA and DFCA do not guarantee an automatic in-person hearing in every instance.[4]

Chang never requested a hearing. Nor did his opposition demonstrate that the governments' motions were arbitrary or capricious. So the District Court did not err in granting the governments' motions to dismiss his *qui tam* action without holding an in-person hearing. We will affirm the orders of the District Court.

---

[4] The need for a request to trigger a hearing is supported by the Supreme Court's interpretation of "opportunity for a public hearing" in similar administrative contexts. *See, e.g.*, *Costle v. Pac. Legal Found.*, 445 U.S. 198, 202, 214 (1980) (holding that the EPA reasonably construed the language "opportunity for a public hearing" as not requiring a public hearing where none was requested); *Nat'l Indep. Coal Operators' Ass'n v. Kleppe*, 423 U.S. 388, 398 (1976) ("[The statute] provides the mine operators with no more than 'an opportunity' for a hearing. The word 'opportunity' would be meaningless if the statute contemplated formal adjudicated findings whether or not a requested evidentiary hearing is held. … [T]he language of the statute … requires the Secretary to make formal findings of fact … only when the mine operator requests a hearing. The requirement for a formal hearing … is keyed to a request, and the requirement for formal findings is keyed to the same request.").