| |
|:---:|
| **City of New York v E-J Elec. Installation Co.** |
| 2025 NY Slip Op 30972(U) |
| March 27, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 100303/2013 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. JOHN J. KELLEY**

*Justice*

| | |
|---|---|
| PART | 56M |

---------------------------------------------------------------------------X

CITY OF NEW YORK, ex rel. JOSEPH LERMAN

Plaintiff,

- v -

E-J ELECTRIC INSTALLATION COMPANY,

Defendant.

---------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 100303/2013 |
| MOTION DATE | 12/13/2024 |
| MOTION SEQ. NO. | 010 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 010) 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 191, 193, 194, 195, 196, 197, 198, 199, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283

were read on this motion to/for _____RENEWAL_____ .

This is an action, inter alia, pursuant to section 189 the New York False Claims Act (State Finance Law §§ 186-194), in which the relator, Joseph Lerman, sought qui tam relief, on behalf of the City of New York, against the former defendants Siemens AG and Siemens Electrical, LLC (together the Siemens defendants), in connection with electrical work that they performed behalf of the City's Department of Environmental Protection (DEP) in the course of constructing the Croton Water Filtration Plant (the plant). Lerman moves, for the second time, pursuant to CPLR 2221(e) for leave to renew his opposition to the City's motion to dismiss the section 189 cause of action that Lerman had asserted against the Siemens defendants (SEQ 008), which had been granted in an order dated July 3, 2019, as amended July 24, 2019 (Madden, J.). In an order dated December 15, 2020, Justice Madden granted Lerman's first motion for leave to renew, but adhered to her initial determination granting the City's motion to dismiss (SEQ 009). The instant motion is opposed by the sole remaining defendant, E-J Electric Installation Company (E-J), against whom Lerman presently is litigating a claim in this action pursuant to State Finance Law § 191 to recover for wrongful termination of employment.

100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS
Motion No.  010

Page 1 of 10

[* 1]

The instant motion for leave to renew is denied.

As relevant here, Lerman commenced this action on behalf of the City against the Siemens defendants, alleging that, contrary to his own opinion, certain electrical work that they proposed and approved for the plant, and installed therein, violated the New York City Electrical Code (Admin. Code of City of N.Y. §§ 27-3001-3025; hereinafter NYCEC) and, thus, that they engaged in deceptive and dangerous practices and charged the DEP for improper work that needed revision.  The DEP entered into a contract with the Siemens defendants for work at the plant, for which the cost of all construction by all involved trades exceeded $3.3 billion. According to E-J, the Siemens defendants initially were joint venturers with Schlesinger Electrical Contractors (SEC), but eventually replaced SEC with E-J, first as a consultant, and later as a subcontractor, to assist them with the work.  E-J had hired Lerman in October 2010 to serve as a project manager overseeing electrical work at the plant, and Lerman alleged, in his amended complaint, that his "primary role on the project was to review the high voltage installation of the Croton Plant, identify weaknesses or violations, prepare estimated budgets for corrective work, and ultimately make a recommendation to EJ and Siemens' management."

As part of his job responsibilities, Lerman came upon what he believed to be a potential violation of the NYCEC, explaining that the NYCEC prohibited two 5,000-volt cables from sharing the same junction box, apparently premising his concerns on an NYCEC provision that applied only to cables with voltages under 600 volts.  According to E-J, Lerman later conceded that this provision did not apply, and thereafter expressed his concern that the proposed junction box violated another NYCEC provision that addressed only the combination of cables rated for 600 volts or less with cables rated for more than 600 volts.  E-J argued that, inasmuch as both of the cables involved were rated for 5,000 volts, that provision also was inapplicable. E-J further contended that, contrary to Lerman's opinion, the proposed installation did not violate a NYCEC provision allegedly prohibiting the commingling of primary service feeders, since the cables in issue were not service feeders, and that none of the NYCEC restrictions

applied to cables, such as those proposed to be installed at the plant, that were protected by more than two circuit breakers downstream of the current. The City's Electrical Code Revision and Interpretation Committee (ECRIC) initially entertained Lerman's concerns in a preliminary advisory opinion. Nonetheless, those concerns ultimately were rejected by DEP Deputy Commissioner Kathryn Mallon, who was in charge of the construction project for the plant, and advised Lerman that "there were no problems at the plant and that [he] should refrain from contacting her on the issue again," as well as by Project Engineer of Record Pavan Pulijaal, P.E., of the engineering and consulting firm AECOM, in addition to the DEP's Chief of Power and Mechanical Support Division, Maxim Klavansky, P.E. Subsequent ECRIC chair Mathher Abbassi, P.E., submitted an affidavit confirming that there was no violation of the NYCEC. The project was completed according to the plans proposed and approved by the Siemens defendants, and the DEP, as project owner, continued to pay the Siemens defendants without interruption. Lerman commenced this action on February 8, 2013, seeking, among other things, relief pursuant to the section 189 of the False Claims Act, based on the Siemens defendants' alleged misrepresentations to the City in connection with the 5,000-volt electrical cables and the installation of the junction box at the plant. In response to Lerman's further complaints, on May 8, 2013, DEP Commissioner Carter H. Strickland, Jr., wrote to Lerman, asserting that:

> "[i]n the event of a power outage at the Plant, DEP designed the Plant to be able to immediately switch over to Cat[skill]/Del[aware] water, which does not have to be filtered, for any Croton-related distribution requirements. This means that any areas served by the Plant would not experience any water service interruption.
>                                          * * *
>
> "I would like to emphasize that the Cat/Del system has sufficient capacity to serve the entire New York City distribution system with the Plant offline."

The City declined to intervene in this action. On or about September 14, 2018, the City moved pursuant to State Finance Law § 190(5)(b)(i) to dismiss the section 189 cause of action. In the July 3, 2019 order, the court granted the City's motion and dismissed that cause of action. In her decision and order, Justice Madden first explained that, generally, judicial interpretation of

**100303/2013  CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                **Page 3 of 10**
**Motion No. 010**

[* 3]                                       3 of 10

the New York False Claims Act follows federal court interpretations of the federal False Claims Act (31 USC §§ 3729, *et seq.*) (*see State of New York ex rel. Seiden v Utica First Ins. Co.*, 96 AD3d 67, 71 [1st Dept 2012]). She wrote that federal courts had adopted two different standards applicable to situations where governmental entity for whose benefit a qui tam action purportedly is commenced seeks to dismiss the complaint---the "rational relation" test, which requires that entity to identify a valid purpose for dismissing the complaint and a rational relationship between the dismissal and that purpose (*see United States ex rel. Sequoia Orange Co. v Baird-Neece Packing Corp.*, 151 F3d 1139, 1145 [9th Cir 1998]), and the "unfettered right" standard, pursuant to which the entity has an absolute right to seek dismissal, except where there is a showing that a party committed a fraud upon the court itself, and which holds that the purpose of conducting a hearing on the entity's motion to dismiss was simply to provide the relator with the opportunity to convince that entity to permit the cause of action to proceed (*see Swift v United States*, 318 F3d 250, 251-253 [DC Cir 2003]).

Justice Madden concluded that it was irrelevant as to which standard she needed to apply, since the City here satisfied the less-deferential rational relation test by establishing the "tenuous merit" of Lerman's claim and its interest in preserving taxpayer resources arising from the ongoing litigation. With respect to the merits of Lerman's claim, she determined that

> "the City has investigated the allegations asserted in the Relator's original complaint and First Amended Complaint that the electrical system at the Croton Plant violated that NYCEC, and has provided affidavits attesting to compliance with applicable Code requirements. Specifically, with respect to the Code provisions cited in the First Amended Complaint at issue here, the City provides [an] affidavit that NYCEC § 708.10(b), concerning critical operation power systems ('COPS') does not apply since the Croton Plant did not receive a COPS designation from DEP; that § 700.12(D), concerning emergency power systems[,] has no application since the Croton Plant is not fed by an additional service facility, and that 408.60(E)(2), concerning minimum capacity of certain busbars, does not bear on the commingling of cable or pull boxes. As for the contract requirements, the Klavansky affidavit submitted by the City states that the only commingling of cable is at four medium voltage switch gear units and that such commingling with overcurrent devices that can shut off power is permissible under the contract."

100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS
Motion No.  010

Page 4 of 10

4 of 10

Justice Madden thus concluded that the City had demonstrated a rational basis for the dismissal of the section 189 cause of action, and that, in opposition to that showing, Lerman did not submit evidence that the determination was fraudulent, illegal, or arbitrary and capricious. She came to this conclusion because Lerman did not address the opinions rendered by City officials and retained experts with respect to whether there were any NYCEC violations, and that any allegations that the Siemens defendants violated Consolidated Edison Blue Book requirements were explicitly rebutted by Abbassi's reply affidavit, in which he explained that these requirements applied to equipment outside of and external to the DEP's electrical substation, while the subject cables and junction box were located inside of the substation.

In the December 15, 2020 decision and order, Justice Madden granted renewal, but adhered to her initial determination to dismiss the section 189 cause of action, explaining that Lerman failed to demonstrate that the City relied upon improper factors in declining to intervene and in moving to dismiss that cause of action. Since December 15, 2020, Lerman and E-J, the two remaining parties, conducted discovery in connection with the cause of action alleging wrongful termination of Lerman's employment. In 2022, they engaged in mediation in an attempt to settle the wrongful termination cause of action. On July 30, 2024, Lerman filed a note of issue and certificate of readiness. On September 24, 2024, E-J moved for summary judgment dismissing that cause of action.

On September 26, 2024, Lerman made the instant motion, again seeking renewal of his opposition to the City's motion to dismiss the section 189 cause of action, and requested this court thereupon to deny the dismissal motion, reinstate that cause of action, and restore the Siemens' defendants as parties to the action.

A motion for leave to renew "'shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination'" (*McLaughlin v Snowlift, Inc.*, 214 AD3d 720, 721 [2d Dept 2023], quoting CPLR 2221[e][2]; *see Melcher v Apollo Med. Fund Mgt.,*

**100303/2013 CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No. 010**

Page 5 of 10

*LLC,* 105 AD3d 15, 23 [1st Dept 2013]; *Dinallo v DAL Elec*., 60 AD3d 620, 621 [2d Dept 2009];

*American Audio Serv. Bur. Inc. v. AT & T Corp*., 33 AD3d 473, 476 [1st Dept 2006]).  E-J has

established that the motion should be barred by the doctrine of laches, and the court concludes

that that so much of Lerman's motion as was premised upon an alleged change in law was

untimely under CPLR 2221(e)(2).  In any event, the plaintiff failed to demonstrate the existence

of any new facts or any change in the law that would have changed the court's initial

determination of the City's motion.

Although the CPLR generally does not articulate any specific deadline for making a

motion for leave to renew, where, as here, the basis for the renewal motion is an alleged

change in the law, the motion must be made prior to the entry of a final judgment in the action,

or before the time to appeal from an adverse order has fully expired (*see* CPLR 2221[e][2];

*Wilmington Trust N.A. v Fife,*  212 AD3d 550, 550-551 [1st Dept 2023] ["Plaintiff's renewal

motion was made after its time to appeal from the January 29, 2020 order granting defendant

summary judgment dismissing the complaint had lapsed"]; *Matter of 160 E. 84th St. v New York*

*State Div. of Hous. & Community Renewal*, 203 AD3d 501, 501 [1st Dept 2022]; *Daniels v Millar*

*El. Indus., Inc*., 44 AD3d 895, 895 [2d Dept 2007]).  On July 24, 2019, the Siemens defendants

served Lerman with a copy of the order dated July 3, 2019, as amended July 24, 2019, with

notice of entry.  Hence, Lerman's time to appeal from that order expired on August 23, 2019

(see CPLR 5513[a]; General Construction Law § 20).  The instant renewal motion was made on

September 26, 2024 and, thus, long after Lerner's time to appeal from the order granting

defendant summary judgment dismissing the complaint had lapsed.  Hence, to the extent that

the instant motion seeks renewal based on a change in law, it must be denied as untimely.

With respect to Lerman's contentions that "new facts" not submitted in opposition to the

City's motion or in support of his first renewal motion underpin the instant renewal motion, the

court recognizes that "[m]ere lateness is not a barrier to" moving for leave to renew.  "It must be

lateness coupled with significant prejudice to the other side, the very elements of the laches

**100303/2013  CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No.  010**

**Page 6 of 10**

6 of 10

[* 6]

doctrine" (*Edenwald Contracting Co., Inc. v City of New York,* 60 NY2d 957, 959 [1983] [internal quotation marks and citation omitted]; *see Abdelnabi v New York City Tr. Auth.*, 273 AD2d 114, 115 [1st Dept 2000]).  Here, however, the alleged "new facts" upon which Lerman relies were available to him as long ago as 2011, when he came into possession or obtained knowledge of the existence of several affidavits that he now claims would change the outcome of Justice Madden's determinations.  Lerman, however, did not provide a reasonable justification for his failure to include those affidavits and related information in opposition to the City's motion, and so much of the motion for leave to renew as was based upon "new facts" may be denied on that ground alone (*see Leighton v Lowenberg*, 125 AD3d 427, 427-428 [1st Dept 2015]; *Onglingswan v Chase Home Fin., LLC,* 104 AD3d 543, 544 [1st Dept 2013]; *James v 1620 Westchester Ave., LLC,* 105 AD3d 1, 7 [1st Dept 2013]).  Moreover, even were the court to conclude that he provided such a justification, Lerman's four-year delay in making the instant motion, the prejudice to E-J in participating the 2022 mediation, and the prejudice to the City and the Siemens defendants in having to recommence discovery if the motion were granted, after the action already has been on the trial calendar for eight months, warrant the application of the doctrine of laches to bar consideration of the entirety of the instant motion, including so much of the motion as alleged "new facts" (*see Schucht v Innovative Biodefense, Inc.*, 217 AD3d 703, 703-704 [2d Dept 2023] [lengthy delay of four years in making renewal motion warrants denial of the motion on the ground of laches, particularly where parties engaged in arbitration during that period of time]; *Crimlis v City of New York*, 200 AD3d 555, 556 [1st Dept 2021]; *Arias-Paulino v Academy Bus Tours, Inc.*, 48 AD3d 350, 350 [1st Dept 2008]).

Nor does the court discern any basis for granting leave to renew in the interest of justice (*see Onglingswan v Chase Home Fin., LLC,* 104 AD3d at 544), particularly because Lerman failed to establish that the facts not previously presented to the court would change the outcome of Justice Madden's determinations, or that there actually has been a change in law that requires a decision contrary to hers.

100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS                Page 7 of 10
Motion No.  010

Contrary to Lerman's contentions, the United States Supreme Court's determination in *United States ex rel. Polansky v Executive Health Resources, Inc.* (599 US 419 [2023]), did not effectuate a change in the standards under New York law for the government's right to dismiss a qui tam action over a relator's objections. In *State of New York ex rel. Walsh v Dayan* (2022 NY Slip Op 31966[U], 2022 NY Misc LEXIS 10989 [Sup Ct, N.Y. County, Jun. 27, 2022]), the court, citing *Sequoia Orange Co.* and *Swift,* essentially reiterated and approved of Justice Madden's analysis in this action. The Walsh decision articulated the parameters of the less-deferential "rational relation" test as follows:

> "[A] court first analyzes whether any 'evidence [was presented] that the defendant[ ] engaged in bribery, fraud, or coercion, or otherwise conspired with the government to dismiss the qui tam action[ ] for improper reasons' (*Sequoia,* 151 F3d at 1146), or, in other words, that the relator 'failed to establish that the government's prosecutorial judgment was arbitrary and capricious, illegal, or fraudulent' (*Swift*, 318 F3d at 254). Second, a court evaluates the financial burden of litigating a particular claim: 'the government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relator [ ] were to litigate the FCA claims, the government would continue to incur enormous internal staff costs.' *Sequoia*, 151 F3d at 1146. *Sequoia* concluded that the government could 'dismiss a meritorious qui tam action over a relator's objections [w]here . . . the government offers reasons for dismissal that are rationally related to a legitimate government interest.' *Id*. at 1147. Thus, *Sequoia* notes that '"[i]t is not clear whether in practice this notice and hearing requirement has amounted to much of a hurdle for the government."' *Id*. at 1144 (alteration in original) (*quoting* Kelly, 9 F3d at 753 n 11)"

(*id.*, 2022 NY Slip Op 31966[U], *7-8, 2022 NY Misc LEXIS 10989, *10-11). In *Polansky*, the United States Supreme Court essentially adopted the "rational relation test," holding that a governmental entity's motion to dismiss a federal False Claims Act complaint should be denied in only "the most exceptional cases" (*United States ex rel. Polansky v Executive Health Resources, Inc.*, 599 US at 437), and that the motion court "should think several times over before denying a motion to dismiss" (*id*. at 438). Crucially, the high Court explained that, "[i]f the Government offers a reasonable argument for why the burdens of continued litigation outweigh its benefits, the court should grant the motion. And that is so even if the relator presents a credible assessment to the contrary" (*id*.). This is not "new" law, but simply a clarification that

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No.  010**

Page 8 of 10

the United States Supreme Court declined to adopt the "unfettered right" standard articulated by at least one United States Court of Appeals. Even though New York appellate courts have asserted that federal judicial interpretation of the federal False Claims Act should guide their own interpretation of the equivalent State statute, they are not required adhere to such an interpretation if it is inimical to State public policy. Nonetheless, applying the *Polansky* test to the facts of this case, as Lerman asks this court to do, the court is constrained to conclude that the City propounded a reasonable argument for why the burdens of continued litigation outweighed its benefits. Nor does the United States Supreme Court's determination in In *Schutte v SuperValu, Inc.* (598 US 739 [2023]), imposing a scienter requirement that mandates consideration of a defendant's subjective beliefs, compel a different result here, since Lerman adduced no evidence to establish that the Siemens defendants knew or should have known that their proposed configuration of the subject electrical cables constituted a violation of the NYCEC, let alone a fraudulent or deceptive act inimical to the DEP's interests.

Lerman's reliance upon *Loper Bright Enters. v Raimondo* (603 US 369 [2024]) is completely misplaced. In that decision, the United States Supreme Court overruled long-standing precedent applying so-called "Chevron deference" to federal agencies (*Chevron, U.S.A., Inc. v Natural Resources Defense Council, Inc.*, 467 US 837 [1984]), and determined that, in actions for judicial review pursuant to the federal Administrative Procedure Act (5 USC §§ 551, *et seq.*), federal courts need not give deference to federal agencies' interpretations of federal statutes, notwithstanding their specific technical or scientific expertise. That decision did not involve the federal False Claims Act, which, according to the *Polansky* decision issued only one year earlier, still required deference to governmental entities who sought to dismiss qui tam actions. Moreover, New York courts are not bound to apply, to the New York Constitution, the United States Supreme Court's interpretation and application of federal separation of powers doctrine under the United States Constitution. Rather, this State's Court of Appeals has steadfastly held that, "[w]hile agency interpretations of their own regulations are generally

**100303/2013  CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No.  010**

Page 9 of 10

afforded considerable deference, courts must scrutinize administrative rules for genuine reasonableness and rationality in the specific context presented by a case" (*Matter of Murphy v. New York State Div. of Hous. & Community Renewal*, 21 NY3d 649, 654-655 [2013] [citations and internal quotation marks omitted]; *see Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]; *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359 [1999]; *Matter of Gaines v New York State Div. of Hous. & Community Renewal,* 90 NY2d 545, 548-549 [1997]).  Moreover, it has explained that, "[w]hile as a general rule courts will not defer to administrative agencies in matters of pure statutory interpretation, deference is appropriate where the question is one of specific application of a broad statutory term" (*Matter of O'Brien v Spitzer*, 7 NY3d 239, 242 [2006] [citations and internal quotation marks omitted]; *see Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]; *Matter of American Tel. & Tel. Co. v State Tax Comm*., 61 NY2d 393, 400 [1984]).

Lerman's remaining contentions are without merit.

Accordingly, it is,

ORDERED that the motion is denied; and it is further,

ORDERED that the defendant E-J Electric Installation Company is awarded motion costs in the sum of $100.00 (CPLR 8202), to be paid by the relator, Joseph Lerman.

This constitutes the Decision and Order of the court.

| 3/27/2025 | | JOHN J. KELLEY, J.S.C. |
| --- | --- | --- |
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |