**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES EX REL. DARRYN KELLY,

*Plaintiff-Appellant*,

v.

SERCO, INC., a New Jersey Corporation,

*Defendant-Appellee.*

No. 14-56769

D.C. No. 3:11-cv-02975-WQH-RBB

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted October 19, 2016
Pasadena, California

Filed January 12, 2017

Before: Richard C. Tallman, Barrington D. Parker, Jr.,[*]
and Morgan B. Christen, Circuit Judges.

Opinion by Judge Tallman

---

[*] Senior United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

## SUMMARY[**]

### False Claims Act

The panel affirmed the district court's summary judgment in favor of the defendant in an action under the False Claims Act.

The plaintiff alleged that his former employer Serco, Inc., a technology and project management services provider, submitted fraudulent claims for payment to the United States for work done under a government contract. The Department of Defense, Navy Space and Naval Warfare Systems Command (SPAWAR), contracted with Serco for work on the Advanced Wireless Systems Spectrum Relocation Project, a project to upgrade the wireless communications systems situated along the United States-Mexico border for the Department of Homeland Security, Customs and Border Protection (DHS). The interagency contract between SPAWAR and DHS required SPAWAR to implement a cost and progress tracking system known as an earned value management (EVM) system. The services provided by Serco were covered under its Naval Electronic Surveillance Systems contract with SPAWAR.

The panel affirmed the district court's summary judgment on a claim that Serco submitted false or fraudulent claims for payment under an implied false certification theory of liability under the False Claims Act. The panel applied *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), which held that a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

government contract need not expressly designate a requirement as a condition of payment in order to trigger liability under the theory of implied certification. Instead, what matters is whether the defendant knowingly violated a requirement that it knew was material to the government's payment decision. To establish liability, the defendant's claim for payment must make specific representations about the goods or services provided, and the defendant's failure to disclose material statutory, regulatory, or contractual requirements must make those representations misleading half-truths. The panel held that the plaintiff did not satisfy the standard for materiality set forth in *Escobar* because there was no genuine issue of material fact as to the materiality of Serco's compliance with the American National Standards Institute/Electronic Industries Alliance Standard 748 (ANSI-748) or its obligation to provide valid EVM reports.

The panel also affirmed the district court's summary judgment on claims that Serco violated the False Claims Act by making false records material to a false or fraudulent claim, conspired to violate the False Claims Act, wrongfully retained overpayments, and wrongfully terminated the plaintiff in violation of public policy under California state law.

---

## COUNSEL

Derek J. Emge (argued), Emge & Associates, San Diego, California, for Plaintiff-Appellant.

Francis J. Burke, Jr. (argued), Foley & Lardner LLP, San Francisco, California; James M. Harris and Daniel P.

Wierzba, Seyfarth Shaw LLP, Los Angeles, California; for
Defendant-Appellee.

## OPINION

TALLMAN, Circuit Judge:

Relator Darryn Kelly brought this *qui tam* action under
the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733,
against his former employer, Serco, Inc., a technology and
project management services provider, alleging that Serco
submitted fraudulent claims for payment to the United States
for work done under a government contract. Kelly also
asserted claims for wrongful termination under California
law. The district court granted Serco's motion for summary
judgment on all of Kelly's claims. We affirm.

## I

In 2007, Serco was awarded a $62 million, three-year
contract by the Department of Defense, Navy Space and
Naval Warfare Systems Command (SPAWAR) to provide
project management, engineering design, and installation
support services for a range of government projects.[1] The
Naval Electronic Surveillance Systems (NESS) Contract
was a type of contract that "provides for an indefinite
quantity, within stated limits, of supplies or services during
a fixed period." 48 C.F.R. § 16.504(a). Pursuant to the
NESS Contract, SPAWAR submitted individual Delivery

---

[1] SPAWAR is the Navy's information systems and acquisition
command. It designs, develops, and sustains communications and
information systems for the United States military and federal agencies.

Orders to Serco that detailed the specific work Serco was to perform.

In 2008, the Department of Homeland Security, Customs and Border Protection (DHS) entered into an interagency contract with SPAWAR to upgrade the wireless communications systems situated along the United States-Mexico border.  This project became known as the Advanced Wireless Systems Spectrum Relocation Project (AWS Project).  The contract required SPAWAR to implement a cost and progress tracking system known as an earned value management system (EVMS), "a project management tool that effectively integrates the project scope of work with cost, schedule and performance elements for optimum project planning and control."  48 C.F.R. § 2.101.

SPAWAR, in turn, subcontracted with Serco to purchase the necessary equipment, perform non-construction upgrades, and provide project management services for the AWS Project.  Because these services were covered under the NESS Contract, SPAWAR issued Delivery Orders #0049 and #0054 to Serco under the NESS Contract detailing the work that Serco was to perform on the AWS Project.[2]  Delivery Orders 49 and 54 provided for different periods of performance from September 2009 to January 2012, but were nearly identical in all other respects.  Each Delivery Order contained a Statement of Work (SOW) that required Serco to provide project management and cost reports to SPAWAR, including EVM reports, "in accordance with the attached CDRLs [Contract Data Requirements Lists]."  The attached CDRLs specified:

---

[2] Although Serco worked on the AWS Project under other Delivery Orders as well, Delivery Orders 49 and 54 are the only ones at issue in this appeal.

"Contractor [Serco's] format acceptable.   Create reports using MS Office Applications."

Serco's employees manually recorded their hours on Serco's internal accounting system using a single charge code for all tasks they performed on the AWS Project.  Serco then compiled the time entries into Microsoft (MS) Excel spreadsheets to create monthly cost reports that it sent to SPAWAR.  In January 2010, Serco informed SPAWAR that it could not automate its accounting system or accommodate the thousands of AWS Project task line-items that SPAWAR used in the reports it sent to DHS under its interagency contract.   SPAWAR advised Serco that it would accept Serco's monthly cost reports on MS Excel spreadsheets using information that Serco employees tracked and compiled manually.  SPAWAR also advised that DHS was aware of Serco's cost tracking format and had approved it.

Serco hired Kelly as an EVM analyst in October 2009 to monitor Serco's performance on the AWS Project and identify any cost or schedule overruns.  In April 2011, Kelly informed DHS that Serco's monthly cost reports were unreliable because they tracked costs manually and with a single charge code in violation of the guidelines in the American National Standards Institute/Electronic Industries Alliance Standard 748 (ANSI-748).  Kelly also informed DHS that Serco was falsifying its monthly reports to make its actual costs match the expected budget for the AWS Project.  That same month, DHS and SPAWAR determined that EVM reports were no longer necessary or cost-justified for the AWS Project.  SPAWAR directed Serco to reduce the number of EVM analysts working on the AWS Project. Kelly's supervisors at Serco, unaware of his recent report to DHS, terminated Kelly in May 2011.   Following his termination, Kelly's position no longer existed at Serco.

Kelly filed suit against Serco as a *qui tam* relator under the FCA, asserting the following claims for relief: (1) submitting false claims for payment in violation of the FCA under a theory of implied false certification, (2) making false records material to a false or fraudulent claim in violation of the FCA, (3) conspiring to violate the FCA, (4) retention of overpayments in violation of the FCA, and (5) unlawful termination in violation of public policy under California common law.[3]

The district court granted summary judgment in favor of Serco on all of Kelly's claims. The district court also denied as moot Serco's motion to strike the opinion and deposition testimony of Kelly's expert, Kevin Martin, on whether Serco's compliance with ANSI-748 was incorporated by reference into the Delivery Orders and whether Serco's internal system was capable of complying with ANSI-748. This timely appeal followed.

## II

We have jurisdiction to review the district court's grant of summary judgment under 18 U.S.C. § 1291. *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1205 (9th Cir. 2012). "We review de novo the district court's grant of summary judgment." *Id.* "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quotation marks omitted). "[T]he mere existence

---

[3] Kelly asserted other state-law claims challenging his termination, but they are deemed waived for purposes of this appeal because he failed to raise them in his opening brief. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

"To survive summary judgment, the relator must establish *evidence* on which a reasonable jury could find for the plaintiff." *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (citation and alterations omitted). "If the facts make a claim 'implausible,' the non-movant must present 'more persuasive evidence than would otherwise be necessary' in order to defeat a summary judgment motion." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995). "The district court's grant of summary judgment may be affirmed if it is supported by any ground in the record, whether or not the district court relied upon that ground." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

"The district court's exclusion of evidence in a summary judgment motion is reviewed for an abuse of discretion." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997)). Thus, "we must affirm the district court unless its evidentiary ruling was manifestly erroneous *and* prejudicial." *Id.* (citing *Joiner*, 522 U.S. at 142).

### III

Kelly's principal contention on appeal is that the district court erroneously granted summary judgment on his FCA claim alleging that Serco submitted false or fraudulent

claims for payment under an implied false certification theory of liability. *See* 31 U.S.C. § 3729(a)(1)(A). The FCA's *qui tam* provision permits a private person (known as a "relator") to bring a civil action on behalf of the United States against any individual or company who has knowingly presented a false or fraudulent claim for payment to the United States. *Id.* § 3730(b); *see id.* § 3729(a)(1)(A) (imposing civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval").[4] The FCA encourages insiders to disclose fraud by awarding successful *qui tam* plaintiffs a portion of any judgment, plus reasonable attorneys' fees and costs. *Id.* § 3730(d).

Under the implied false certification theory advanced by Kelly, a defendant's act of submitting a claim for payment "impliedly certifies compliance with all conditions of payment." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016). The district court determined that "it is only possible for a claimant to implicitly certify compliance with a law, rule, or regulation if there is a relevant 'statute, rule, regulation, or contract' in place that conditions payment of the claim on compliance with that underlying law, rule or regulation." It therefore analyzed whether any statute, regulation, or contractual provision conditioned Serco's right to payment on its compliance with ANSI-748.

The Federal Acquisition Regulation (FAR) provides that government contracts that require a contractor to use an

---

[4] "In practice, the phrase [*qui tam*] means 'an action under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.'" *Aflatooni*, 314 F.3d at 997 n.1 (citation omitted).

EVMS must include a form clause stating that the EVMS shall comply with ANSI-748.     48 C.F.R. §§ 34.203(c), 52.234-4(a).     Similarly, the Defense Federal Acquisition Regulation Supplement (DFARS) provides that government contracts valued at $20 million or more must include a form clause stating that the contractor shall use an EVMS that complies with ANSI-748.     *Id.* §§ 234.203(2), 252.234-7002(b)(1).     It is undisputed here that the NESS Contract and Delivery Orders 49 and 54 do not contain or incorporate by reference the FAR or DFARS form clauses requiring compliance with ANSI-748.

Instead, the NESS Contract incorporated the form clause in 48 C.F.R. § 52.232-1, which provides that "[t]he Government shall pay the Contractor [Serco], upon the submission of proper invoices or vouchers, the prices stipulated in this contract for supplies delivered and accepted or services rendered and accepted."     Although the Delivery Orders referenced ANSI-748 under a list of "Applicable Documents," significantly both orders provided that, "[i]n the event of a conflict between the text of [the Delivery Order] and the applicable document cited herein, the text of [the Delivery Order] should take precedence."     The Orders' terms required Serco to deliver its project management reports in accordance with the attached CDRLs, which provided that Serco's own format and its use of Microsoft Office applications—including Excel spreadsheets—to create the reports were acceptable.

In granting summary judgment for Serco, the district court concluded that Kelly's implied false certification claim failed as a matter of law because "there is no regulation that expressly conditions payment for the vouchers . . . on [Serco's] compliance with ANSI 748," and "neither the NESS Contract nor the Delivery Orders require[d]

compliance with ANSI 748 as a condition of payment by the government." It further held that, at best, any implied contractual requirement in the Delivery Orders that conditions Serco's payment on compliance with ANSI-748 "is not a false claim, but a breach of contract."

Kelly argues on appeal that the district court applied the wrong legal standard by analyzing whether the underlying regulations or Delivery Orders *expressly* conditioned Serco's payment on its compliance with ANSI-748. The proper analysis, Kelly argues, is whether Serco's failure to disclose that its data was falsified and that its EVM reports did not comply with ANSI-748 was material to the government's payment decision.

## A

At the time of the district court's ruling, federal circuits were split on whether an implied false certification theory under the FCA requires that payment be expressly conditioned on a defendant's compliance with a statutory, regulatory, or contractual requirement. *See United States ex rel. Kelly v. Serco, Inc.*, Civ. No. 11-2975 WQH RBB, 2015 WL 1191280, at *3 (S.D. Cal. Mar. 16, 2015). Recently, however, the Supreme Court clarified the circumstances supporting FCA liability under an implied false certification theory. *Escobar*, 136 S. Ct. at 1996.

In *Escobar*, the Supreme Court rejected the contention that a government contract or regulation must expressly designate a requirement as a condition of payment in order to trigger liability under the theory of implied certification. *Id.* The Court reasoned that "concerns about fair notice and open-ended liability 'can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements,'" which "are rigorous." *Id.* at 2002 (quoting

*United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010) (*SAIC*)).[5]  Instead, the Supreme Court held:

> False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment.  Defendants can be liable for violating requirements even if they were not expressly designated as conditions of payment.  Conversely, even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability. What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.

*Id.* at 1996.

The Court further held that "the implied certification theory can be a basis for liability, at least where two conditions are satisfied:  first, the claim does not merely

---

[5] The FCA's scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).  We need not analyze scienter here because Kelly's implied false certification claim fails on other grounds.  Nevertheless, "[f]or a *qui tam* action to survive summary judgment, the relator must produce sufficient evidence to support an inference of knowing fraud."  *N. Telecom, Inc.*, 52 F.3d at 815.

request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with *material* statutory, regulatory, or contractual requirements makes those representations misleading half-truths"—i.e., "representations that state the truth only so far as it goes, while omitting critical qualifying information." *Id.* at 2000–01 (emphasis added).

## B

Kelly argues that Serco's compliance with ANSI-748 was an implied condition of its right to payment under Delivery Orders 49 and 54 because the Delivery Orders required Serco to deliver EVM reports, ANSI-748 is the only industry standard for EVM reporting, and the Delivery Orders referenced ANSI-748 under "Applicable Documents." Thus, Kelly contends, Serco's submission of its public vouchers for the Delivery Orders constituted an implied false certification that its deliverables met ANSI-748 guidelines and were not falsified.

Even assuming that Serco's compliance with ANSI-748 was a condition of payment for its work under Delivery Orders 49 and 54, Kelly's implied false certification claim nonetheless fails as a matter of law. First, there is no evidence that Serco's public vouchers made any specific representations about Serco's performance. *See Escobar*, 136 S. Ct. at 2001. Serco submitted forty-seven public vouchers totaling over $5.5 million to the Department of Defense for its work under Delivery Orders 49 and 54. Each voucher was submitted on U.S. Standard Form 1034 and provided the period of performance, total costs incurred during that period, and Serco's fee applicable to that work. Each voucher also included a continuation sheet listing the dollar amounts for Serco's costs for labor, travel,

and materials.      Serco additionally submitted backup documentation for each voucher, which included its internal project status reports containing even more detailed line-item descriptions of its services and total hours and costs.

Serco's vouchers each contained a single express certification that the services listed in them were performed during the time periods stated.      Contrary to Kelly's contention that "Serco was paid predominately for its work delivering what the government thought was a valid EVM rather than for work [upgrading] the 85 border towers," most of the costs for which Serco's vouchers sought payment were for the software and hardware needed to upgrade the AWS, for travel to the cell towers to perform the upgrades, and for the labor costs of at least thirty employees. There is no evidence that these employees failed to do the work for which SPAWAR had contracted.

Second, there is no evidence that Serco's public vouchers contained any false or inaccurate statements. Kelly's dispute here is over the *format* that Serco used to report costs incurred.  Even viewing Kelly's evidence of Serco's allegedly fraudulent cost reporting in the light most favorable to Kelly, his FCA claim fails because the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment'"—here, Serco's public vouchers. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted); *see Aflatooni*, 314 F.3d at 1002 ("The False Claims Act . . . focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme."); *United States ex rel. Hendow v. Univ. of Phx.,* 461 F.3d 1166, 1173 (9th Cir. 2006) ("[F]or a false statement or course of action to be actionable . . ., it is necessary that it involve an actual

*claim . . . .*").  As we have previously stated, "an actual false claim is the *sine qua non* of an FCA violation."  *Cafasso*, 637 F.3d at 1055 (citation and alterations omitted).

Finally, "[a] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."  *Escobar*, 136 S. Ct. at 1996.  Courts can properly dismiss an FCA claim on summary judgment based on a claimant's failure to meet the rigorous standard for materiality under the FCA.  *Id.* at 2004 n.6.  In *Escobar*, a unanimous Supreme Court clarified how rigorously the FCA's materiality requirement must be enforced:

> The materiality standard is demanding.  The False Claims Act is not "an all-purpose antifraud statute" or a vehicle for punishing garden-variety breaches of contract or regulatory violations.  A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.  Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.  Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* at 2003 (citation omitted); *see also SAIC*, 626 F.3d at 1271 ("By enforcing [the materiality] requirement rigorously, courts will ensure that government contractors will not face 'onerous and unforeseen FCA liability' as the

result of noncompliance with any of 'potentially hundreds of legal requirements' established by contract.   Payment requests by a contractor who has violated minor contractual provisions that are merely ancillary to the parties' bargain are neither false nor fraudulent.").  We think Kelly's theory of liability falters on these shoals.

## C

Kelly nonetheless argues that Serco's omissions were material because the government relied on Serco's reports to manage the AWS Project and its budget.  Kelly states that, "[i]f Serco had disclossed [sic] that it did not have a compliant EVMS or that its EVM reports were fraudulent, it is doubtful Serco's payment vouchers would have been paid."  In *Escobar*, the Supreme Court rejected a view that the test for materiality "is whether the person knew that the government could lawfully withhold payment."  *Escobar*, 136 S. Ct. at 2004 (citation omitted).  The Supreme Court held that "[t]he False Claims Act does not adopt such an extraordinarily expansive view of liability," and evidence that the government "would be entitled to refuse payment were it aware of the violation" is insufficient by itself to support a finding that the violation is material to the government's payment decision.  *Id.*  Likewise, here, the possibility that the government would be entitled to refuse payment if it were aware of Serco's alleged violations is insufficient by itself to support a finding of materiality.

Further, the Supreme Court held that, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."  *Id.* at 2003.  "Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in

position, that is strong evidence that the requirements are not material." *Id.* at 2003–04.

Here, it is undisputed that compliance with ANSI-748 was not an express term in Delivery Orders 49 and 54. It is also undisputed that the CDRLs governing Serco's performance under those Delivery Orders provided for EVM reports in "contractor format" using Microsoft Office applications, which is what Serco delivered. It is further undisputed that SPAWAR—through its AWS Project Manager, John Mitchell, who in turn received DHS's agreement—agreed that Serco could provide its reporting on MS Excel spreadsheets using manually tracked and compiled data rather than an EVM system. And it is undisputed that SPAWAR accepted monthly cost reports from Serco that utilized a single task charge code. In addition, it is undisputed that Serco periodically submitted public vouchers and received payment for its work on the AWS Project under both Delivery Orders.

Of particular importance here, it is undisputed that SPAWAR did not find Serco's EVM reports helpful and did not use them to manage the AWS Project. SPAWAR considered EVM "very hard to manage and hard to do," and requiring a lot of work, time, and money. In April 2011, DHS and SPAWAR eliminated the EVM requirement because it provided minimal benefit and was not cost-justified. In addition, DHS and SPAWAR recognized that the Department of Defense's 2005 Revision to its EVM Policy discouraged EVM for "level of effort" work, which was the type of work that Serco's reporting team did here. On those grounds, SPAWAR directed Serco to reduce the number of EVM analysts working on the AWS Project, resulting in Kelly's layoff.

Kelly has failed to establish a genuine issue of material fact regarding the materiality of Serco's obligations to comply with ANSI-748 or provide valid EVM reports. Given the demanding standard required for materiality under the FCA, the government's acceptance of Serco's reports despite their non-compliance with ANSI-748, and the government's payment of Serco's public vouchers for its work under Delivery Orders 49 and 54, we conclude that no reasonable jury could return a verdict for Kelly on his implied false certification claim. *See N. Telecom, Inc.*, 52 F.3d at 815–17 ("There is evidence that, when installed, the Letterkenny switch did not work properly. But no reasonable jury could draw an inference of presentation of a false or fraudulent claim from that [because the] Army knew the switch was unsatisfactory . . . .").

Accordingly, we affirm the district court's grant of summary judgment on Kelly's FCA claim for submitting false or fraudulent claims for payment under an implied false certification theory of liability.

## IV

Kelly also challenges the district court's grant of summary judgment on his FCA claim alleging that Serco made false records material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B). "[T]o establish a cause of action under § 3729(a)(1)(B), the United States or a relator must show that defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1048 (9th Cir. 2012). The existence of a false or fraudulent claim is therefore an essential element of a false records claim under § 3729(a)(1)(B). Because Kelly has failed to raise a genuine issue of material fact regarding the submission of a false or

fraudulent claim, his false records claim fails as a matter of law.  Accordingly, we affirm the district court's grant of summary judgment on Kelly's false records claim.

## V

Kelly also argues that, in granting summary judgment on his conspiracy claim, the district court "did not address or evaluate the additional evidence that Mr. Mitchell [the AWS Project Manager at SPAWAR] conspired with Serco to produce fraudulent EVM reports on a monthly basis."  The district court, however, considered "Mitchell's uncontroverted testimony . . . that he informed DHS of [Serco's] modified hours tracking and DHS approved the change," and found "no evidence of an agreement between John Mitchell and Serco personnel to submit a false claim." The district court also rejected Kelly's "unsubstantiated assertion of a secret agreement" between Mitchell and Serco to submit a false claim.

Kelly does not identify the "additional evidence" that the district court failed to consider; nor does he explain why failing to consider such evidence resulted in error here.  We have noted previously that we will not "consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," are argued only in passing, or that constitute bare assertions without supporting argument. *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010) (citations omitted). Because Kelly failed to argue this issue specifically and distinctly in his opening brief, we decline to consider it here. *See id.* at 487; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 930 (9th Cir. 2015) ("Because these matters were not 'specifically and distinctly argued' in the open briefing, we will not consider them."  (citation omitted)).

## VI

Further, Kelly challenges the district court's grant of summary judgment on his FCA claim for wrongful retention of overpayments in violation of 31 U.S.C. § 3729(a)(1)(G). That FCA provision, known as the "reverse false claims" provision, creates liability for one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." *Id.* "The 'reverse false claims' provision does not eliminate or supplant the FCA's false claim requirement . . . ." *Cafasso*, 637 F.3d at 1056. Because Kelly's cause of action for submitting false or fraudulent claims for payment fails as a matter of law, so too does his "reverse false claims" cause of action.

## VII

Kelly further argues that the district court erred in granting summary judgment against him on his *Tameny* claim for wrongful termination in violation of public policy.[6] "[W]rongful termination cases involving a *Tameny* cause of action are limited to those claims finding support in an important public policy based on a *statutory* or *constitutional* provision." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 79 (1998) (emphasis added). "This limitation recognizes an employer's general discretion to discharge an at-will employee without cause under [the California Labor Code]."

---

[6] A claim for wrongful termination in violation of public policy is a California common-law claim created by *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980).

*Id.* Kelly argues that he was fired in violation of the fundamental public policy reflected in Labor Code § 1102.5, which prohibits employers from "retaliat[ing] against an employee for disclosing information . . . to a government or law enforcement agency." Cal. Lab. Code § 1102.5(b).

The district court here granted summary judgment in favor of Serco on Kelly's claim for unlawful retaliatory discharge in violation of Labor Code § 1102.5, but Kelly did not challenge that ruling on appeal. Because "arguments not raised by a party in its opening brief are deemed waived," *Marsh*, 194 F.3d at 1052, the district court's determination that Serco did not violate Labor Code § 1102.5 forecloses Kelly's *Tameny* claim based on a violation of § 1102.5 as a matter of law.

Kelly also premises his wrongful termination argument on the fact that he was terminated *after* he reported Serco's time-charging practices to DHS. It is undisputed, however, that nobody at Serco knew Kelly had spoken to DHS prior to his termination: Tom Helman, Kelly's supervisor, and Denise Ellison, Helman's supervisor, both testified that they were not aware of Kelly's reporting activities before he was terminated. Kelly has not controverted this testimony. Nor has he presented any evidence that would permit a reasonable inference that someone at Serco knew about his reporting activities before he was terminated.

In addition, Kelly acknowledges that he was an at-will employee for Serco. And it is undisputed that DHS and SPAWAR no longer needed an EVM analyst in Kelly's position for the AWS Project. Kelly admits that he was provided this reason when he was laid off, and it is undisputed that Kelly's position no longer existed after his termination. Accordingly, because it is undisputed that Serco employees were unaware that Kelly spoke to DHS

prior to his termination, we affirm the district court's grant of summary judgment on Kelly's *Tameny* claim.

## VIII

Kelly lastly contends that the district court erred in striking as moot the deposition testimony of his expert, Kevin Martin, because it consisted of (1) improper legal conclusions on whether ANSI-748 was incorporated by reference into the Delivery Orders, and (2) irrelevant testimony concerning whether Serco had in fact complied with ANSI-748. "Under Federal Rule of Evidence 702, matters of law are inappropriate subjects for expert testimony." *Hooper*, 688 F.3d at 1052. Even if expert testimony "may assist the trier of fact, the trial court has broad discretion to admit or exclude it." *Id.* (quoting *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (per curiam)).

Here, the district court was in the best position to determine whether Kevin Martin's deposition testimony would be helpful to its analysis. Because the district court had concluded that Serco's right to payment under the Delivery Orders was not conditioned on its compliance with ANSI-748, Martin's testimony regarding the various ways Serco failed to comply with ANSI-748 was irrelevant to the court's analysis. As such, the district court's exclusion of Martin's testimony was not manifestly erroneous or prejudicial, and it must therefore be affirmed. *See Orr*, 285 F.3d at 773.

## IX

For Kelly to prevail on his implied false certification theory, the gravamen of his claim here, Kelly must satisfy the "rigorous" and "demanding" standard for materiality set

forth in *Escobar*.  He has failed to do so.  Because Kelly's implied false certification claim fails, his remaining FCA claims also fail as a matter of law.  Nor has Kelly established a predicate for his *Tameny* claim.  Lastly, the district court's exclusion of Martin's testimony was not an abuse of discretion, and Kelly has failed to show any prejudicial error.

**AFFIRMED.**