**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,
*Appellant,*

v.

UNITED STATES EX REL. GWEN THROWER,
*Plaintiff-Appellee*,

v.

ACADEMY MORTGAGE CORPORATION,
*Defendant.*

</td><td>

No. 18-16408

D.C. No.
3:16-cv-02120-EMC

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted November 14, 2019
San Francisco, California

Filed August 4, 2020

Before:  Kim McLane Wardlaw, William A. Fletcher,
and Richard Linn,* Circuit Judges.

Opinion by Judge Wardlaw

**SUMMARY****

**False Claims Act / Collateral Order Doctrine**

The panel dismissed for lack of jurisdiction an appeal from the district court's order denying a government motion to dismiss a False Claims Act case.

The government declined to intervene in the case and then sought dismissal under 31 U.S.C. § 3730(c)(2)(A), which allows the United States to move to dismiss an FCA action notwithstanding the objections of the relator who brought the action.  The district court denied the motion to dismiss both because the government failed to meet its burden of demonstrating a valid governmental purpose related to the dismissal and because it failed to fully investigate the allegations of the amended complaint.

The panel held that the district court's order was not an immediately appealable collateral order.  The panel concluded that this jurisdictional question was not decided by the Supreme Court in *United States ex rel. Eisenstein v.*

---

* The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

*City of N.Y.*, 556 U.S. 928 (2009).  The panel held that the collateral order doctrine did not apply because the district court's order did not resolve important questions separate from the merits.  The panel concluded that the interests implicated by an erroneous denial of a government motion to dismiss an FCA case in which it has not intervened were insufficiently important to justify an immediate appeal.

## COUNSEL

Melissa N. Patterson (argued), Michael S. Raab, and Charles W. Scarborough, Appellate Staff; David L. Anderson, United States Attorney; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellant.

J. Nelson Thomas (argued), Thomas & Solomon LLP, Rochester, New York; Sanford J. Rosen and Van Swearingen, Rosen Bien Galvan & Grunfeld LLP, San Francisco, California; for Plaintiff-Appellee.

Jeffrey S. Bucholtz, Anne M. Voigts, and Bethany L. Rupert, King & Spalding LLP, Washington, D.C.; Steven P. Lehotsky and Michael B. Schon, United States Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

Claire M. Sylvia, Phillips & Cohen LLP, San Francisco, California; Jacklyn N. DeMar, Taxpayers Against Fraud Education Fund, Washington, D.C.; Jennifer M. Verkamp, Morgan Verkamp LLP, Cincinnati, Ohio; for Amicus Curiae Taxpayers Against Fraud Education Fund.

**OPINION**

WARDLAW, Circuit Judge:

The False Claims Act (FCA) allows any person with knowledge that false or fraudulent claims for payment have been submitted to the federal government to bring a *qui tam* suit[1] on behalf of the United States against the perpetrator. If successful, the individual initiating the suit, known as the "relator," keeps a percentage of any recovery, with the remainder going to the Government. Each year, suits initiated by private relators return billions of dollars to the public fisc.[2]

When a *qui tam* suit is filed, the Government may choose to intervene and prosecute the case itself. 31 U.S.C. § 3730(b)(4)(A). If it declines to intervene, the relator has "the right to conduct the action." *Id.* § 3730(b)(4)(B). Here, the Government notified the district court that it declined to intervene in a *qui tam* suit filed by relator Gwen Thrower. It then filed a motion seeking dismissal of the action under § 3730(c)(2)(A) of the FCA. The district court denied the motion both because the Government failed to meet its burden of demonstrating a valid governmental purpose

---

[1] "[T]he phrase *qui tam* means an action under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 330 n.4 (9th Cir. 2017) (internal alterations and quotation marks omitted).

[2] In Fiscal Year 2019, FCA suits initiated by private relators recovered more than $2.2 billion, including almost $300 million in cases in which the Government declined to intervene. U.S. Dep't of Justice, *Fraud Statistics – Overview: October 1, 1986 – September 30, 2019* (2020), https://tinyurl.com/vvbvx5h.

related to the dismissal and because it failed to fully investigate the allegations of the amended complaint.

The Government filed an immediate appeal, asserting appellate jurisdiction under the collateral order doctrine. We are thus presented with a question of first impression in the federal courts:  is a district court order denying a Government motion to dismiss an FCA case under § 3730(c)(2)(A) an immediately appealable collateral order? We conclude that such orders fall outside the collateral order doctrine's narrow scope and dismiss the appeal for lack of jurisdiction.

## I.

Academy Mortgage Corporation (Academy) is a mortgage lender that participates in residential mortgage insurance programs run by the Federal Housing Administration (FHA). These government programs insure lenders against losses incurred on certain qualifying mortgages. While the insurance programs are designed to encourage the extension of credit to low income borrowers, they are also a boon to lenders, who earn income from the mortgages without bearing the risk of loss in the event of default. Because the Government is financially responsible if borrowers default on their loans, both borrowers and loans must meet certain eligibility criteria to qualify for FHA insurance.  Participating lenders must certify that the mortgages they originate comply with these requirements.

Gwen Thrower works for Academy as an underwriter. She filed this FCA suit, detailing a scheme through which Academy certified loans for FHA insurance even though they failed to meet the Government's requirements. Some of the insured loans were subsequently defaulted upon, resulting in financial losses that the Government was

required to cover. Thrower alleged that the Government would not have insured the loans had it known about Academy's lending practices, so Academy's false certifications of compliance with government requirements amounted to false claims within the meaning of the FCA.

The Government declined to exercise its statutory right to intervene and prosecute the case itself and so notified the court. Under the FCA, Thrower then had the right to conduct the action herself. *Id.* § 3730(b)(4)(B). But instead of permitting her to do so, the Government moved to dismiss under 31 U.S.C. § 3730(c)(2)(A), which allows the United States to move to dismiss an FCA action "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." The Government argued that if the case proceeded, it would be "burdened by discovery requests" that would "tax many of the same resources being used in other litigation and investigations." It asserted a "right to undertake a cost-benefit analysis and to conclude it is not in the public interest to spend further time and resources on [Thrower's] litigation of this matter."

Whether a motion to dismiss under § 3730(c)(2)(A) should be granted is governed by a two-step test. *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998). The Government bears the initial burden of identifying a "valid governmental purpose" and showing a "rational relation between dismissal and accomplishment of the purpose." *Id.* If the Government makes this showing, the burden shifts to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.*

Applying the *Sequoia Orange* test, the district court concluded that the Government's asserted cost-benefit justification fell short at both steps of the analysis. Specifically, the court determined that the Government could not have meaningfully assessed the potential recovery from the suit—i.e., the benefit side of the cost-benefit analysis—because it had not sufficiently investigated Thrower's claims, including by failing to investigate the detailed allegations of wrongdoing Thrower had added when she amended her original complaint. The district court therefore denied the Government's motion to dismiss.

The Government immediately appealed, invoking appellate jurisdiction under the collateral order doctrine.[3]

## II.

We have jurisdiction to determine our jurisdiction, which includes authority to decide whether the district court's denial of the motion to dismiss under § 3730(c)(2)(A) is immediately appealable under the collateral order doctrine. *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 798 (9th Cir. 2012).

## III.

## A.

Under 28 U.S.C. § 1291, the courts of appeals have jurisdiction over "appeals from all final decisions of the district courts." This statute is most often invoked as the basis for appellate jurisdiction over quintessential "final

---

[3] A motions panel of our court stayed further district court proceedings pending the resolution of this appeal.

decisions," such as final judgments. But it also encompasses "a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). This has become known as the "collateral order doctrine."

To fall within the limited scope of the collateral order doctrine, a district court order must satisfy three requirements first described by the Supreme Court in *Cohen*: it must (1) be "conclusive" on the issue at hand, (2) "resolve important questions separate from the merits," and (3) be "effectively unreviewable" after final judgment. *Id.* at 106; *see Cohen*, 337 U.S. at 545–46. These conditions are "stringent," *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994), and efforts to expand the scope of the collateral order doctrine have been repeatedly rebuffed, *Will v. Hallock*, 546 U.S. 345, 350 (2006).

Stringent application of the final judgment rule avoids encroachment on the "special role" that district judges play as initial arbiters of "the many questions of law and fact that occur in the course of a trial." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). As the Supreme Court has explained, "[i]mplicit in § 1291 is Congress' judgment that the *district judge* has primary responsibility to police the prejudgment tactics of litigants, and that the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985). The final judgment rule also furthers the strong interest in judicial efficiency and the avoidance of piecemeal appellate proceedings. *Mohawk Indus.*, 558 U.S. at 106. Under a more relaxed standard, "cases could be interrupted

and trials postponed indefinitely as enterprising appellants bounced matters between the district and appellate courts." *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 723 (9th Cir. 2017) (citing *Bank of Columbia v. Sweeny*, 26 U.S. (1 Pet.) 567, 569 (1828)).

**B.**

The Government first contends that the Supreme Court has already held that the denial of a government motion to dismiss a *qui tam* suit over the relator's objection is an appealable collateral order.  *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009).  But that question was not before the Court in *Eisenstein*; nor was it even addressed.  The question in *Eisenstein* was whether the Government is a "party" to a *qui tam* action under the FCA when it has declined to intervene.  *See id.* at 930–31. The Supreme Court unanimously answered: "No."

In *Eisenstein*, the Government declined to intervene in a *qui tam* action filed by Eisenstein, and the defendants successfully moved to dismiss.  *Id.* at 930.  Eisenstein filed his notice of appeal within the 60-day period of Federal Rule of Appellate Procedure 4(a)(1)(B), which is the time limit applicable when the United States or its officer or agency is a party, rather than within the 30-day period that applies to everyone else.  *Id.*   The Court stated that the question presented was "whether the 30-day time limit to file a notice of appeal in Federal Rule of Appellate Procedure 4(a)(1)(A) or the 60-day time limit in Rule 4(a)(1)(B) applies when the United States declines to formally intervene in a *qui tam* action brought under the False Claims Act."  *Id.* at 929. After considering the plain meaning of the word "party" and its prior precedent, which instructed that a litigant becomes a party only through intervention, the Court held that "[a]lthough the United States is aware of and minimally

involved in every FCA action . . . it is not a 'party' . . . for purposes of the appellate filing deadline unless it has exercised its right to intervene in the case." *Id.* at 932–34.

In Footnote 2 of the *Eisenstein* opinion, the Court noted that its holding "d[id] not mean that the United States must intervene before it can appeal *any order* of the court in an FCA action." *Id.* at 931 n.2 (emphasis added). And it gave some examples of situations in which "the Government is a party for purposes of appealing the specific order at issue even though it is not a party for purposes of the final judgment and Federal Rule of Appellate Procedure 4(a)(1)(B)." *Id.*

The Court explained that the Government may appeal "the dismissal of an FCA action over its objection," citing to FCA § 3730(b)(1), which prohibits the dismissal of an FCA case without the Attorney General's written consent. *Id.* It also pointed out that a denial of a Government motion to intervene under FCA § 3730(c)(3) would be immediately appealable, *id.*, as denials of motions to intervene of right generally are, *see, e.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011). These examples of when non-parties may appeal from a specific order meet the *Cohen* requirements for appealability of a collateral order, thus giving the appellate court jurisdiction to entertain them. *See Robert Ito Farm, Inc. v. County of Maui*, 842 F.3d 681, 687–88 (9th Cir. 2016) (explaining that the collateral order doctrine is the source of the right to immediately appeal the denial of a motion to intervene).

In no place in Footnote 2 or elsewhere in *Eisenstein* did the Court indicate that the denial of a Government motion to dismiss an FCA action that the relator has a statutory right to prosecute, where the Government declined to intervene as a party, is an appealable order under *Cohen*. And, unlike in

*Eisenstein*, whether or not the United States is a party is not the focus of our analysis here.  Rather, the question is whether the district court's order satisfies the collateral order doctrine requirements and is thus a "final decision" within the meaning of 28 U.S.C. § 1291.  We disagree with the Government's assertion that there is "no basis for distinguishing the appealability of an order rejecting the United States' objection to dismissal under Section 3730(b)(1) and an order rejecting the United States' request for such dismissal under Section 3730(c)(2)(A)."  The former order ends the action and is therefore prototypically "final,"[4] while the latter order allows the case to continue, and the motion can be renewed as circumstances change.[5]

In sum, Footnote 2 of *Eisenstein* stands for the narrow proposition that even when the Government is not a party to an FCA action because it has not intervened, there are some orders that determine important rights with sufficient finality that the Government may appeal them under the collateral order doctrine.  It says nothing about whether orders denying

---

[4] The Government hypothesizes that in cases where FCA claims are joined in a single action with other claims, an order dismissing the FCA claims over the Government's objection would not necessarily end the case.  In those circumstances, it contends, Footnote 2 of *Eisenstein* allows the Government to take an immediate appeal even before the remaining claims are resolved in a final judgment.  But we do not believe Footnote 2 was directed toward this unusual scenario.  Footnote 2 of *Eisenstein* says that under the collateral order doctrine, "the United States may appeal . . . the dismissal of an FCA *action* over its objection." 556 U.S. at 931 n.2 (emphasis added).  We assume that by using the word "action" instead of "claim," the Court meant to refer to an order that ended the entire case.

[5] This is particularly true in this case because the district court rejected the Government's motion to dismiss for lack of a meaningful cost-benefit analysis, in which the Government might still engage.

a Government motion to dismiss under § 3730(c)(2)(A) satisfy the collateral order doctrine requirements.  We now turn to that question.

## C.

The small class of district court decisions immediately appealable under the collateral order doctrine includes only orders that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable after final judgment.  *Mohawk Indus.*, 558 U.S. at 106.  Here, whether the order resolved important questions separate from the merits is dispositive.

## 1.

Explicit in the second requirement of the collateral order test, the question of importance is also implicated by the third *Cohen* condition—effective unreviewability—because whether an order is effectively unreviewable "cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement."  *Digital Equip.*, 511 U.S. at 878–79. Whether a particular category of district court orders is "important" enough to merit immediate appellate consideration turns on "whether delaying review . . . 'would imperil a substantial public interest' or 'some particular value of a high order.'"  *Mohawk Indus.*, 558 U.S. at 107 (quoting *Will*, 546 U.S. at 352–53).  Even orders implicating rights that are generally considered "important" in the abstract have been found to fall outside the collateral order doctrine's scope.  *See, e.g.*, *id.* at 114 (order finding a waiver of attorney-client privilege); *Flanagan v. United States*, 465 U.S. 259, 262–63 (1984) (order disqualifying a criminal defendant's chosen counsel); *see also Mohawk Indus.*, 558 U.S. at 117 (Thomas, J., concurring) (explaining that the

Supreme Court has narrowed the scope of the collateral order doctrine "principally by raising the bar on what types of interests are 'important enough' to justify collateral order appeals").

In determining whether a district court order is immediately appealable, we do not focus on the exigencies presented by any individual case. *Mohawk Indus.*, 558 U.S. at 107. Instead, "the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted by a prompt appellate court decision." *Digital Equip.*, 511 U.S. at 868 (internal citation, quotation marks, and alteration omitted). The mere fact that a class of orders may never be subject to appellate review after final judgment is not, on its own, sufficient to justify an immediate appeal. *Cf. id.* at 878 (emphasizing that a collateral order appeal is available only if the right implicated is important).

**2.**

The interests implicated by orders denying a Government motion to dismiss under § 3730(c)(2)(A) of the FCA are not sufficiently important to justify expanding the collateral order doctrine's narrow scope, at least in cases where the Government has not exercised its right to intervene.

In support of its motion to dismiss, the Government cited the likelihood that it would face burdensome discovery requests if the litigation proceeded. We have previously acknowledged that the Government may legitimately consider the avoidance of litigation costs as a basis for moving to dismiss an FCA case. *Sequoia Orange*, 151 F.3d at 1146. But the mere fact that an erroneous denial of a

§ 3730(c)(2)(A) motion could lead to unnecessary government expenditures does not render the denial order immediately appealable. The Supreme Court has made clear that an interest in "abbreviating litigation troublesome to Government employees" is not important enough to justify a collateral order appeal. *Will*, 546 U.S. at 353. Otherwise, the valuable interests served by the final judgment rule "would fade out whenever the Government or an official lost an early round that could have stopped the fight." *Id.* at 354.

The Government argues that motions to dismiss under § 3730(c)(2)(A) "further[] interests similar to the doctrine of qualified immunity" in that they exist to protect the Government from "the burdens associated with the litigation itself." Without an immediate appeal, the Government contends, its interest in avoiding litigation burdens would be lost forever.

This is not the first time a litigant has sought to analogize its interests to those served by the doctrine of qualified immunity to support an immediate appeal.[6] *See Will*, 546 U.S. at 350–51; *Digital Equip.*, 511 U.S. at 871; *SolarCity*, 859 F.3d at 725. But we are mindful of the Supreme Court's instruction that "claims of a 'right not to be tried'" must be viewed "with skepticism, if not a jaundiced eye." *Digital Equip.*, 511 U.S. at 873. After all, with a "lawyer's temptation to generalize," *Will*, 546 U.S. at 350, almost any right that could be vindicated through a motion to dismiss could be characterized as providing immunity from further proceedings. *Digital Equip.*, 511 U.S. at 873.

---

[6] Denials of qualified immunity may be immediately appealed under the collateral order doctrine to the extent they turn on questions of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Even accepting that one purpose of § 3730(c)(2)(A) is to provide the Government with a mechanism for dismissing financially burdensome cases, that is not enough to treat the provision as tantamount to a grant of immunity. The Government's interest in cost avoidance is simply not a "value of a high order" on par with those the collateral order doctrine has been held to protect. *Will*, 546 U.S. at 352–54; *see, e.g.*, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (allowing immediate appeal of the denial of Eleventh Amendment immunity to protect the "dignitary interests" of states); *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982) (allowing immediate appeal of the denial of absolute presidential immunity to protect "essential Presidential prerogatives under the separation of powers"); *Abney v. United States*, 431 U.S. 651, 661 (1977) (allowing an immediate appeal to protect the Double Jeopardy Clause's guarantee that an individual "will not be forced . . . to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense").

The Government argues that cases like *Will* are inapposite because they addressed a *defendant's* ability to appeal the denial of a motion to dismiss, whereas in FCA cases, the United States should be viewed as akin to a plaintiff seeking to voluntarily dismiss its own case.[7] But *Eisenstein* makes clear that the United States is not a party, and therefore not a plaintiff, when it has declined to exercise its right to intervene. 556 U.S. at 933 ("[I]ntervention is the requisite method for a nonparty to become a party to a

---

[7] Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a plaintiff may voluntarily dismiss a case without a court order if it files a notice of dismissal before the opposing party serves an answer or a motion for summary judgment.

lawsuit."). Instead, the Government is more akin to a third-party assignor, albeit one that retains some statutory rights to participate in the proceedings. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("The FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim."); *see also* 31 U.S.C. § 3730(c)(3)–(4) (detailing rights retained by the Government when it declines to intervene).[8]

As a third party, the Government and its agencies are subject to the same discovery obligations as other non-parties under Federal Rule of Civil Procedure 45, including the obligation to respond to subpoenas for documents and testimony. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994); *see also Yousuf v. Samantar*, 451 F.3d 248, 256–57 (D.C. Cir. 2006); John T. Boese, *Civil False Claims and Qui Tam Actions* § 5.07 (4th ed. 2011) (explaining the use of Rule 45 subpoenas to obtain discovery from government agencies in FCA cases). When third-party discovery obligations become onerous, Rule 45 allows the subject of a subpoena to file a motion to quash on grounds of undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). We have previously identified this procedural mechanism as a means by which the Government can vindicate its "serious and legitimate" interest in ensuring "that its employee resources [are] not . . . commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Exxon Shipping*, 34 F.3d at 779.

---

[8] These include the right to be served with pleadings and receive copies of deposition transcripts, the right to seek a stay of discovery if it "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts," and the right to intervene at a later date upon a showing of good cause. 31 U.S.C. § 3730(c)(3)–(4).

Yet notwithstanding the important interest in ensuring that non-parties are not subjected to burdensome discovery requests, orders denying a motion to quash a Rule 45 subpoena generally cannot be immediately appealed under the collateral order doctrine.  *Perry v. Schwarzenegger*, 602 F.3d 976, 979 (9th Cir. 2010) (per curiam) (citing *In re Subpoena Served on Cal. Pub. Utils. Comm'n*, 813 F.2d 1473, 1476 (9th Cir. 1987)).  Instead, a non-party can obtain appellate review only by ignoring the subpoena, accepting the consequences of being held in contempt, and appealing the ensuing contempt citation.[9]  *Cal. Pub. Utils. Comm'n*, 813 F.2d at 1476; *see also Mohawk Indus.*, 558 U.S. at 111–12 (explaining that noncompliance and contempt is a means by which an individual subject to a discovery order can obtain appellate review).  It would be incongruous to hold, as we are asked to here, that the Government's interest in dismissing the case to avoid the *possibility* of future onerous discovery requests is important enough to merit an immediate appeal, when third parties *actually faced* with burdensome subpoenas have no such right.

Inherent in the final judgment rule is the possibility that some cases will proceed further than they should have, resulting in increased costs for parties and non-parties alike. But a mere interest in avoiding these costs has never been enough to justify an immediate appeal, even when they will

---

[9] We have recognized limited exceptions to this rule "when a subpoena is issued by a district court in favor of a nonparty in connection with a case pending in a district court of another circuit," *Cal. Pub. Utils. Comm'n*, 813 F.2d at 1476, or when the subject of the subpoena is a "disinterested third-party custodian of privileged documents" who "would most likely produce the documents rather than submit to a contempt citation," *United States v. Krane*, 625 F.3d 568, 572 (9th Cir. 2010) (quoting *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006)); *see Perlman v. United States*, 247 U.S. 7 (1918).

be borne by the Government, and consequently, the taxpayers. *Will*, 546 U.S. at 353–54. While we have recognized that the Government may move to dismiss under § 3730(c)(2)(A) when an FCA case will impose an undue burden on the taxpayers or impose "enormous internal staff costs," *Sequoia Orange*, 151 F.3d at 1146, this interest in government efficiency is not a "value of a high order" that may be vindicated through collateral order review, *Will*, 546 U.S. at 352–53.

**3.**

In its reply brief, the Government recharacterizes its interest as one of protecting "fundamental Executive Branch prerogatives"—namely its "wide latitude to determine which enforcement actions will proceed in the United States' name to remedy the United States' injuries." We do not question the validity of this interest, but it is hardly at its apex here. Through the *qui tam* provisions of the FCA, Congress has assigned some enforcement responsibility to private relators, *Stevens*, 529 U.S. at 773, and that partial assignment has "to some degree diminish[ed] Executive Branch control over the initiation and prosecution of [FCA cases]," *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 754–55 (9th Cir. 1993).

Our decisions addressing the motion to dismiss procedures of § 3730(c)(2)(A) make clear that the Government's interests in this area are qualified. In *Kelly*, we held that the FCA does not offend the principle of separation of powers even though it requires the Government to obtain judicial approval before dismissing an FCA suit. *Id.* at 754 n.12, 756. We expanded on this holding in *Sequoia Orange*, where we explicitly recognized that § 3730(c)(2)(A) creates a "check," albeit a limited one, on the Government's prosecutorial discretion.    151 F.3d

at 1144–45.   By requiring the Government to make an adequate showing to justify dismissal, *Sequoia Orange* implicitly contemplated that in some circumstances, an FCA case may proceed even over the Government's objection.  *Id.* at 1145.

Because the FCA's broad intervention rights are a primary means by which the Executive Branch can exercise control over a given case, *id.* at 1144, the Government's interests are particularly attenuated where, as here, it has declined to intervene.  In FCA cases initiated by a private relator, the Government has an unfettered right to intervene within 60 days after service of the complaint and all material evidence the relator possesses, with extensions of the period for intervention available for good cause.   31 U.S.C. § 3730(b)(2)–(3).   And, even if the Government initially declines to intervene, it may intervene later upon a showing of good cause, *id.* § 3730(c)(3), at which point it enjoys the same rights as if it had intervened from the outset, *Sequoia Orange*, 151 F.3d at 1145.

When the Government intervenes, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the [relator]."   31 U.S.C. § 3730(c)(1).  While the relator may remain a party to the case, *id.*, the Government, with the district court's approval, may impose significant limitations on the relator's participation, *id.* § 3730(c)(2)(C).  In short, intervention by the Government "reduce[s] substantially the relator's role." *United States v. Northrop Corp.*, 59 F.3d 953, 964 (9th Cir. 1995).

By contrast, when the Government declines to intervene, the relator "shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4)(B); *see United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 722 (9th Cir.

1994) (noting Congress' intent "to place full responsibility for False Claims Act litigation on private parties, absent early intervention by the government or later intervention for good cause"); *see also* H.R. Rep. 99-660, at 22 (1986) (reflecting that Congress intended the 1986 amendments to the FCA to restore incentives for *qui tam* suits).  As a practical matter, the Government need not do anything beyond respond to discovery requests like any other third party, Fed. R. Civ. P. 45, provide its views if the relator seeks to dismiss the case, 31 U.S.C. § 3730(b)(1), and wait to see if the suit succeeds, in which case the Government receives the bulk of any recovery, *id.* § 3730(d)(2).  Thus, by denying the motion to dismiss here, the district court in no way forced the Government to actively prosecute an action against its will.[10]

For all the separation-of-powers discussion, we cannot escape the conclusion that the Government's true interest in dismissing this case is what it has repeatedly maintained throughout this litigation:  avoiding burdensome discovery expenses in a case the Government does not think will ultimately be worth the cost.  While this may be a legitimate reason for moving to dismiss, *Sequoia Orange*, 151 F.3d at 1146, it is not an interest important enough to merit expanding the narrow scope of the collateral order doctrine, *Will*, 546 U.S. at 350.

## D.

We are not swayed by the Government's argument that refusing to allow an immediate appeal will render orders

---

[10] We do not decide whether the Government may immediately appeal the denial of a motion to dismiss in a case in which it *has* intervened.

denying a motion to dismiss under § 3730(c)(2)(A) effectively unreviewable.

First, any concerns in this area are substantially diminished by the extraordinarily low likelihood of an erroneous denial of a motion to dismiss under § 3730(c)(2)(A). *Cf. Mohawk Indus.*, 558 U.S. at 110 n.2. The test set out in *Sequoia Orange* is not especially demanding, as evidenced by the fact that this is the first time a district court in our circuit has *ever* found the Government's argument for dismissal lacking.[11] There is therefore no reason to think that a new exception to the final judgment rule is necessary to accommodate this rare situation.

Moreover, in many cases, there will be other mechanisms available to mitigate any harms that could flow from the erroneous denial of a motion to dismiss. For example, in moving to dismiss here, the Government claimed that it would be subjected to burdensome discovery requests if the litigation proceeded. But to the extent these requests materialize, the Government can seek to quash or modify them, including on grounds of undue burden. *See* Fed. R. Civ. P. 45(d); *Exxon Shipping*, 34 F.3d at 779. The Government also argues that it has an interest in dismissing cases to prevent the creation of unfavorable precedent. But if the Government is concerned about the direction in which a case is moving, it can move to intervene upon a showing

---

[11] We are aware of only one other instance of a district court denying a Government motion to dismiss under § 3730(c)(2)(A). *See United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, No. 17-CV-765-SMY-MAB, 2019 WL 1598109, at *2–4 (S.D. Ill. Apr. 15, 2019), *appeal docketed* No. 19-2273 (7th Cir. July 8, 2019). An appeal of that decision is currently pending before the Seventh Circuit.

of good cause and take over the prosecution itself.  31 U.S.C.
§ 3730(c)(3).

We recognize that in some cases, the Government may
seek dismissal to protect more unique interests.    For
example, in *Sequoia Orange*, we affirmed the district court's
decision to dismiss a case at the Government's behest in
order "to end the divisiveness in the citrus industry caused
by over ten years of litigation."  151 F.3d at 1142, 1146.  The
Government has also sought dismissal when it contended
that continued prosecution of a *qui tam* action would risk the
disclosure of classified information.  *See, e.g.*, *United States
ex rel. Mateski v. Mateski*, 634 F. App'x 192, 193–94 (9th
Cir. 2015).  But it would not be appropriate for us to expand
the collateral order doctrine to accommodate these atypical
cases.  The issue of appealability must be determined "for
the entire category to which a claim belongs," *Digital
Equip.*, 511 U.S. at 868, and we cannot allow immediate
appeal of *all* orders denying § 3730(c)(2)(A) motions simply
because a subset of them may implicate interests more
important than simple cost avoidance, *Mohawk Indus.*,
558 U.S. at 112.  We also see no need to do so because, at
least to this point, district courts have invariably granted
motions to dismiss when concerns of a higher order have
been raised.  *Cf. id.* at 110 n.2.

We emphasize that our decision does not leave the
Government without options for seeking appellate review.
*See id.* at 110–11.  Most obviously, the Government could
ask the district court to certify, and our court to accept, an
interlocutory appeal under 28 U.S.C. § 1292(b), which
allows for appeal of orders that "involve[] a controlling
question of law as to which there is substantial ground for
difference of opinion," when an immediate appeal "may
materially    advance    the    ultimate    termination    of    the

litigation."   And, in extraordinary circumstances, such as where the unjustified disclosure of classified information is at risk, *see Mateski*, 634 F. App'x at 193–94, the Government may seek a writ of mandamus. *Mohawk Indus.*, 558 U.S. at 111.   These "safety valves" are more than adequate to address denials of motions to dismiss that implicate interests more important than run-of-the-mill litigation burdens. *Id.* (alterations omitted).

## IV.

As the Supreme Court has emphasized time and again, the "small class" of immediately appealable collateral orders must remain "narrow and selective in its membership." *Will*, 546 U.S. at 350.   Because the interests implicated by an erroneous denial of a Government motion to dismiss a False Claims Act case in which it has not intervened are insufficiently important to justify an immediate appeal, we conclude that they fall outside of the collateral order doctrine's scope.   We therefore dismiss this appeal for lack of jurisdiction.[12]

**DISMISSED.**

---

[12] Thrower's motion to strike documents from the Government's Excerpts of Record is **DENIED** as moot.